Jim PIERCE and Karen Pierce,
Appellants and Cross–
Appellees,

v.

CATALINA YACHTS, INC., Appellee
and Cross–Appellant.

Nos. S–8394, S–8403.

Supreme Court of Alaska.

May 19, 2000.

Patrick W. Conheady, Juneau, for Appellants/Cross–Appellees.

Eric A. Kueffner, Faulkner Banfield, P.C., Juneau, for Appellee/Cross–Appellant.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

After finding that Catalina Yachts, a sailboat manufacturer, breached its limited warranty to repair a defect in a boat that it sold to Jim and Karen Pierce, a jury awarded the Pierces monetary damages for the reasonable cost of repair. Before submitting the case to the jury, the trial court dismissed the Pierces' claim for consequential damages, finding it barred by an express provision in the warranty. On appeal, the Pierces contend that they were entitled to consequential

damages despite this provision. We agree, holding that because Catalina acted in bad faith when it breached the warranty, the company cannot conscionably enforce the warranty's provision barring consequential damages. Accordingly, we remand for a trial to determine consequential damages.

## II. FACTS AND PROCEEDINGS

In June 1992 Jim and Karen Pierce purchased a forty-two-foot sailboat newly built by Catalina Yachts. Catalina gave the Pierces a limited warranty, promising to repair or pay for repair of any below-waterline blisters that might appear in the gel coat—a smooth outer layer of resin on the boat's hull.[1] The warranty expressly disclaimed Catalina's responsibility for consequential damages.

In June 1994 the Pierces hauled the boat out of the water to perform maintenance and discovered gel-coat blisters on its hull and rudder. They promptly notified Catalina of the problem and submitted a repair estimate of $10,645, which included the cost of removing and replacing the gel coat below the waterline. Catalina refused to accept this estimate, insisting that the hull only needed minor patching. Six months later, after their repeated efforts failed to convince Catalina that the gel coat needed to be replaced, the Pierces sued the company, claiming tort and contract damages. They later amended their complaint to allege a separate claim for unfair trade practices.

Before trial, the superior court ruled that the limited warranty's provision barring con-

sequential damages was not unconscionable. Based on this ruling, the court later precluded the Pierces from submitting their consequential damages claim to the jury, restricting the Pierces' recovery on their claim of breach of contract to their cost of repair, as specified in the limited warranty. The jury awarded the Pierces $12,445 as the reasonable cost of repair, specifically finding that the Pierces had given Catalina timely notice of the blister problem, that Catalina breached its gel-coat warranty, that it acted in bad faith in failing to honor its warranty obligations, and that the Pierces could not have avoided any of their losses.

The Pierces appeal, contending that the trial court erred in striking their claim for consequential damages, in excluding evidence supporting their unfair trade practices claim, and in calculating the attorney's fee award. Catalina cross-appeals, also contesting the attorney's fee order.

## III. DISCUSSION

### A. The Pierces Are Entitled to Consequential Damages.

The Pierces' consequential damages argument requires us to consider a question of first impression concerning how a warranty provision that creates a limited remedy interacts with another provision that excludes consequential damages: if the limited remedy fails, should the exclusion of consequential damages survive?[2]

Alaska's commercial code addresses these issues in AS 45.02.719.[3] The first paragraph

---

1. This limited warranty provided, in relevant part: "Catalina will repair or, at its option, pay for 100% of the labor and material costs necessary to repair any below-the-waterline gel coat blisters that occur within the first year after the boat is placed in the water."

2. Catalina argues that we should review this point only for plain error because the Pierces failed to object to the final jury instructions' omission of their consequential damages claim. But the trial court announced its decision to omit this claim from the instructions after the parties had extensively argued the issue. Thus, by announcing the instructions, the court effectively decided the argument. Since a party has no duty to take exception when the trial court rules on a disputed issue, we conclude that the Pierces

have adequately preserved their right to argue this point on appeal.

3. AS 45.02.719 mirrors U.C.C. § 2–719, providing:

> (a) Subject to (b) and (c) of this section and AS 45.02.718 on liquidation and limitation of damages,
> (1) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

of this provision, subsection .719(a), authorizes limited warranties, allowing parties entering into commercial transactions to "limit or alter the measure of damages recoverable under [chapter 7 of the U.C.C.], as by limiting the buyer's remedies to ... repair and replacement of nonconforming goods or parts" and to agree that the limited remedy is "exclusive, in which case it is the sole remedy." [4] But when a limited remedy fails, the second paragraph of AS 45.02.719, subsection .719(b), nullifies the warranty's limitation, restoring the buyer's right to rely on any authorized remedy: "If circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the code." [5]

■ Courts construing U.C.C. subsection 719(b) agree that a limited warranty to repair "fails of its essential purpose," "when the seller is either unwilling or unable to conform the goods to the contract." [6]

The policy behind the failure of essential purpose rule is to insure that the buyer has "at least minimum adequate remedies." Typically, a limited repair/replacement remedy fails of its essential purpose where (1) the "[s]eller is unsuccessful in repairing or replacing the defective part, regardless of good or bad faith; or (2)[t]here is unreasonable delay in repairing or replacing defective components.[7]

Here, by specifically finding that the Pierces' boat experienced gel-coat blisters, that the Pierces gave Catalina timely notice of the problem, that Catalina thereafter breached its obligations under the limited gel-coat warranty, and that the Pierces could not have avoided their damages, the jury effectively determined that the gel-coat warranty had failed of its essential purpose. Under subsection .719(b), then, the Pierces seemingly can pursue any remedy available under the commercial code, including consequential damages.[8]

But the Pierces' right to consequential damages under subsection .719(b) is not as certain as it seems. The last paragraph of AS 45.02.719, subsection .719(c), separately provides that consequential damages may be limited or excluded "unless the limitation or exclusion is unconscionable." [9] By validating consequential damages exclusions subject only to unconscionability, subsection .719(c) casts doubt upon subsection .719(b)'s implied promise that, when a limited remedy fails, the buyer may claim consequential damages because they are a "remedy ... provided in the code." [10]

The commercial code does not directly resolve this tension between subsections .719(b) and .719(c).[11] When, as here, a limited repair remedy fails, and a separate provision of the warranty bars consequential damages,

(2) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
(b) If circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the code.
(c) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, but limitation of damages where the loss is commercial is not.

4. AS 45.02.719(a).

5. AS 45.02.719(b); *see also* U.C.C. § 2–719.

6. *Chatlos Sys., Inc. v. National Cash Register Corp.,* 635 F.2d 1081, 1085 (3d Cir.1980).

7. *McDermott, Inc. v. Clyde Iron,* 979 F.2d 1068, 1073 (5th Cir.1993) (internal citations omitted), *rev'd on other grounds, McDermott, Inc. v. AmClyde,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d

148 (1994). *See also S.M. Wilson & Co. v. Smith Int'l, Inc.,* 587 F.2d 1363, 1375 (9th Cir.1978); *Liberty Truck Sales, Inc. v. Kimbrel,* 548 So.2d 1379, 1384 (Ala.1989). *See generally* Daniel C. Hagen, *Sections 2–719(2) & 2–719(3) of the Uniform Commercial Code: The Limited Warranty Package & Consequential Damages,* 31 Val. U.L.Rev. 111, 115 (1996).

8. *See* AS 45.02.714; AS 45.02.715(b)(2). *See also Hartzell v. Justus Co.,* 693 F.2d 770, 774 (8th Cir.1982); *S.M. Wilson & Co.,* 587 F.2d at 1375.

9. AS 45.02.719(c); *see also* AS 45.02.715(b).

10. *See* AS 45.02.719(b).

11. *See S.M. Wilson & Co.,* 587 F.2d at 1375 ("The failure of the limited repair warranty to achieve its essential purpose makes available ... the remedies 'as may be had as provided in this code.' This does not mean, however, that the bar to recovery of consequential damages should be eliminated.").

the code fails to say whether a court should apply subsection .719(b) by restoring the buyer's right to seek consequential damages, or whether it should instead apply subsection .719(c) by enforcing the bar against consequential damages "unless . . . unconscionable." [12]

■ Courts addressing this dilemma in other jurisdictions have come to differing conclusions.[13] Some have found the two subsections to be dependent, ruling that when a warranty fails, subsection .719(b)'s command to restore all available remedies trumps subsection .719(c)'s approval of a specific clause that bars consequential damages, regardless of whether that clause might itself be unconscionable.[14] Other courts have applied a case-by-case analysis.[15] But the majority of jurisdictions view these subsections to be

independent, ruling that when a warranty fails, a separate provision barring consequential damages will survive under subsection .719(c) as long as the bar itself is not unconscionable.[16]

We believe that the majority approach best serves the Uniform Commercial Code's underlying purposes "to simplify, clarify and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [and] to make uniform the law among the various jurisdictions." [17] Moreover, this approach balances the purposes of subsections .719(b) and (c) by allowing parties latitude to contract around consequential damages, while protecting buyers from unconscionable results.[18] We therefore adopt the independent

---

12. This ambiguity has been the subject of extensive comment. *See, e.g.,* Hagen, *supra* note 7, at 137 (citing numerous articles proposing clarification).

13. *See* Hagen, *supra* note 7, at 116–18.

14. *See, e.g., Ragen Corp. v. Kearney & Trecker Corp.,* 912 F.2d 619, 624 (3d Cir.1990); *R.W. Murray Co. v. Shatterproof Glass Co.,* 758 F.2d 266, 272 (8th Cir.1985); *Matco Machine & Tool Co. v. Cincinnati Milacron Co.,* 727 F.2d 777, 780 (8th Cir.1984); *Hartzell v. Justus Co.,* 693 F.2d 770, 773–74 (8th Cir.1982); *Select Pork, Inc. v. Babcock Swine, Inc.,* 640 F.2d 147, 149 (8th Cir.1981); *Soo Line R.R. Co. v. Fruehauf Corp.,* 547 F.2d 1365, 1373 (8th Cir.1977); *Riley v. Ford Motor Co.,* 442 F.2d 670, 673 (5th Cir.1971); *Adams v. J.I. Case Co.,* 125 Ill.App.2d 388, 261 N.E.2d 1, 8 (1970); *Givan v. Mack Truck, Inc.,* 569 S.W.2d 243, 249 (Mo.App.1978). *See also* Hagen, *supra* note 7, at 116–17, 128–29.

15. *See Milgard Tempering, Inc. v. Selas Corp. of Am.,* 902 F.2d 703, 708 (9th Cir.1990); *Waters v. Massey–Ferguson, Inc.,* 775 F.2d 587, 591–92 (4th Cir.1985); *Fiorito Bros. v. Fruehauf Corp.,* 747 F.2d 1309, 1314 (9th Cir.1984); *AES Tech. Sys., Inc. v. Coherent Radiation,* 583 F.2d 933, 941 (7th Cir.1978); *S.M. Wilson & Co. v. Smith Int'l, Inc.,* 587 F.2d 1363, 1375–76 (9th Cir.1978); *V–M Corp. v. Bernard Distrib. Co.,* 447 F.2d 864, 868 (7th Cir.1971); *see also* Hagen, *supra* note 7, at 117–18, 131–34.

16. *See, e.g., McNally Wellman Co. v. New York State Elec. & Gas Corp.,* 63 F.3d 1188, 1197 (2d Cir.1995); *Riegel Power Corp. v. Voith Hydro,* 888 F.2d 1043, 1047 (4th Cir.1989); *Kaplan v. RCA Corp.,* 783 F.2d 463, 466 (4th Cir.1986); *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage,* 709 F.2d 427, 434 (6th Cir.1983);

*Chatlos Sys. Inc. v. National Cash Register Corp.,* 635 F.2d 1081, 1086 (3d Cir.1980); *Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1107 (4th Cir.1980); *Aquascene, Inc. v. Noritsu Am. Corp.,* 831 F.Supp. 602, 604 (M.D.Tenn. 1993); *Providence & Worcester R.R. Co. v. Sargent & Greenleaf, Inc.,* 802 F.Supp. 680, 691 (D.R.I. 1992); *McKernan v. United Tech. Co.,* 717 F.Supp. 60, 73 (D.Conn.1989); *Computerized Radiological Servs., Inc. v. Syntex Corp.,* 595 F.Supp. 1495, 1510 (E.D.N.Y.1984), *rev'd on other grounds,* 786 F.2d 72 (2d Cir.1986); *Office Supply Co. v. Basic/Four Corp.,* 538 F.Supp. 776, 787–88 (E.D.Wis.1982); *Polycon Indus., Inc. v. Hercules Inc.,* 471 F.Supp. 1316, 1325 (E.D.Wis. 1979); *American Elec. Power Co. v. Westinghouse Elec. Corp.,* 418 F.Supp. 435, 457–58 (S.D.N.Y. 1976); *Potomac Elec. Power Co. v. Westinghouse Elec. Corp.,* 385 F.Supp. 572, 579 (D.D.C.1974); *County Asphalt, Inc. v. Lewis Welding & Eng'g Corp.,* 323 F.Supp. 1300, 1309 (S.D.N.Y.1970) (interpreting Ohio law); *Canal Elec. Co. v. Westinghouse Elec. Corp.,* 406 Mass. 369, 548 N.E.2d 182, 184 (1990); *Kearney & Trecker Corp. v. Master Engraving Co.,* 107 N.J. 584, 527 A.2d 429, 437 (1987); *Johnson v. John Deere,* 306 N.W.2d 231, 236–38 (S.D.1981); *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112–13 (Utah 1991); *Envirotech Corp. v. Halco Eng'g, Inc.,* 234 Va. 583, 364 S.E.2d 215, 220 (1988). *See also* Hagen, *supra* note 7, at 129–30.

17. U.C.C. § 1–102(2)(1996).

18. *See McKernan v. United Tech. Corp.,* 717 F.Supp. 60, 71 (D.Conn.1989). The comments to U.C.C. § 2–719 provide that, while "minimum adequate remedies must be available" to the buyer when a contract fails, "parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or

approach as the most sensible rule in light of precedent, reason, and policy.[19]

Courts applying this approach recognize that contractual provisions limiting remedies and excluding consequential damages shift the risk of a limited remedy's failure from the seller to the buyer; they examine the totality of the circumstances at issue—including those surrounding the limited remedy's failure—to determine whether there is anything "in the formation of the contract or the circumstances resulting in failure of performance that makes it unconscionable to enforce the parties' allocation of risk."[20]

▌ In determining whether an exclusion is unconscionable, courts examine the circumstances existing when the contract was signed, asking whether "there was . . . reason to conclude that the parties could not competently agree upon the allocation of risk."[21] Courts are more likely to find unconscionability when a consumer is involved, when there is a disparity in bargaining power, and when the consequential damages clause is on a pre-printed form;[22] conversely, they are unlikely to find unconscionability when "such a limitation is freely negotiated between sophisticated parties, which will most likely occur in a commercial setting. . . ."[23]

▌ In addition to inquiring into the circumstances at the time of the sale, courts examine the case "[f]rom the perspective of later events," inquiring whether "it appears that the type of damage claimed . . . came within the realm of expectable losses."[24] The reason for the limited warranty's failure affects this analysis:

Whether the preclusion of consequential damages should be effective in this case depends upon the circumstances involved. The repair remedy's failure of essential purpose, while a discrete question, is not completely irrelevant to the issue of the conscionability of enforcing the consequential damages exclusion. The latter term is "merely an allocation of unknown or undeterminable risks." Recognizing this, *the question . . . narrows to the unconscionability of the buyer retaining the risk of consequential damages upon the failure of the essential purpose of the exclusive repair remedy.*[25]

And in examining why a limited remedy failed of its essential purpose, courts consider it significant if the seller acted unreasonably or in bad faith.[26]

▌ In the present case, the nature of the Pierces' warranty and the circumstances surrounding Catalina's breach weigh heavily against enforcing the consequential damages bar. The contract at issue was a consumer sale, not a commercial transaction between sophisticated businesses with equivalent bargaining power. Catalina unilaterally drafted the damages bar and evidently included it in a preprinted standard limited warranty. Moreover, the jury's sizable award for the reasonable cost of repairing the boat's gel coat establishes that Catalina's breach deprived the Pierces of a substantial benefit of their bargain. Though some gel-coat blistering might have been foreseeable, a defect of this magnitude does not fit neatly "within the

modifying remedies are to be given effect." U.C.C. § 2–719 cmt. 1. In discussing subsection 2-719(3), the U.C.C. comments also recognize that clauses limiting consequential damages are "merely an allocation of unknown or undeterminable risks." U.C.C. § 2–719 cmt. 3.

19. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

20. *Chatlos,* 635 F.2d at 1087.

21. *Id.* at 1087.

22. *See Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1113–14 (Utah 1991). *See also* Eric Eissenstat, *Commercial Transactions: U.C.C. § 2–*

*719: Remedy Limitations & Consequential Damage Exclusions,* 36 Okla. L.Rev. 669, 680 (1983).

23. *Schurtz,* 814 P.2d at 1114; *see also Associated Press v. Southern Ark. Radio Co.,* 34 Ark.App. 211, 809 S.W.2d 695, 697 (1991); *Construction Assocs. v. Fargo Water Equip. Co.,* 446 N.W.2d 237, 242 (N.D.1989).

24. *Chatlos,* 635 F.2d at 1087.

25. *Id.* at 1086–87 (internal citation omitted; emphasis added).

26. *See id.* at 1087 ("This is not a case where the seller acted unreasonably or in bad faith.").

realm of expectable losses." [27]

But the decisive factor in this case is the nature of Catalina's breach, which caused the limited remedy to fail of its essential purpose. The jury specifically found that Catalina acted in bad faith in failing to honor its warranty. This finding virtually establishes a "circumstance[ ] resulting in failure of performance that makes it unconscionable to enforce the parties' allocation of risk." [28] Because the jury found that Catalina consciously deprived the Pierces of their rights under the warranty, the company cannot conscionably demand to enforce its own warranty rights against the Pierces:

> This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid.[29]

Moreover, in light of Catalina's bad faith, allowing the company to enforce the consequential damages bar would conflict with the commercial code's imperative that "[e]very contract or duty in the code imposes an obligation of good faith in its performance or enforcement." [30] Finally, because it is self-evident that the Pierces did not bargain to assume the risk of a bad faith breach by Catalina, enforcing the bar against consequential damages would thwart AS 45.02.719's basic goal of implementing the parties' agreement.

For these reasons, we hold the superior court erred in ruling that it would be conscionable to enforce the warranty's bar against consequential damages and in declining to allow the Pierces to present their consequential damages claim to the jury.[31] We further hold that this error requires us to remand the case for a trial to determine the extent of these damages.

B. *The Trial Court Did Not Abuse Its Discretion in Refusing to Admit as Evidence Letters and Notes from Other Boat Owners.*

The Pierces' amended complaint set forth a claim of deceptive practices under Alaska's Unfair Trade Practices Act, alleging that Catalina had long been aware of a problem with gel-coat yellowing and blistering but had failed to modify its warranty to disclose the gel coat's failure to meet specifications.[32]

Prior to trial, the Pierces submitted as proposed exhibits letters of complaint that Catalina received from other purchasers of

---

27. *Id.*

28. *Id.* In holding that the jury's finding of bad faith establishes unconscionability, we do not suggest that unconscionability is ordinarily a question of fact; we merely recognize bad faith and breach to be predicate facts that will ordinarily preclude an ultimate finding of conscionability. We agree with Catalina that unconscionability under AS 45.02.719(c) ultimately presents an issue of law for the court, rather than one of fact for the jury. *See Potomac Plaza Terraces, Inc. v. QSC Prods., Inc.,* 868 F.Supp. 346, 353 (D.D.C.1994). But as we have pointed out, under the independent analysis articulated in *Chatlos,* the legal issue of unconscionability hinges on the totality of the circumstances, including the circumstances surrounding a limited remedy's failure. *Chatlos,* 635 F.2d at 1086–87; *see also Schurtz,* 814 P.2d at 1114 ("An analysis that takes a case-by-case approach to the question of unconscionability ... provides the courts with a flexible tool for determining the validity of limitations on incidental and consequential damages that serves well the different policies appropriate to consumer and commercial settings."). Because questions concerning breach of a warranty and the parties' good faith involve issues of fact, when disputed evidence requires the trial court to submit these factual issues to the jury, the court's decision on the ultimate question of unconscionability should ordinarily await the jury's factual determinations.

29. *Jones and McKnight Corp. v. Birdsboro Corp.,* 320 F.Supp. 39, 43–44 (N.D.Ill.1970).

30. *See* AS 47.01.203; U.C.C. § 1–203.

31. We need not decide whether the trial court correctly decided that Catalina's inclusion of the consequential damages waiver in its standard limited warranty was not, in itself, unconscionable. Since the Pierces do not challenge this finding, we assume for purposes of this decision that the waiver, standing alone, was conscionable. We hold only that, given Catalina's bad faith breach of the limited warranty, *enforcement* of the waiver would be unconscionable.

32. *See* AS 45.50.471(b), AS 45.50.531.

its boats. Catalina objected to this evidence as irrelevant, hearsay, and lacking foundation. The trial court declined to accept the exhibits, finding that they were marginally relevant but that their relevance was greatly outweighed by their potential to cause prejudice and confusion. At the conclusion of trial, the court refused to allow the Pierces' requested instruction regarding their unfair trade practices claim, finding insufficient evidence to support it.

The Pierces contend that the excluded exhibits formed the heart of their deceptive practices claim since the exhibits showed that Catalina had notice that its gel-coat process was defective. They argue that the court arbitrarily excluded this evidence, and then threw out their cause of action for want of the very evidence that it excluded.

■ These arguments are unpersuasive. The trial court had broad discretion in ruling on the admission of this evidence.[33] Neither below nor on appeal have the Pierces convincingly explained how the excluded evidence could have established their claim or why the trial court should have admitted it. They maintain—and the trial court implicitly acknowledged—that their exhibits were potentially relevant to show that Catalina was aware of a longstanding gel-coat defect. But to prevail on their deceptive practices cause of action, the Pierces had to prove not just that Catalina had longstanding notice of potential defects but also that these defects actually existed. Because the Pierces contend only that the excluded evidence tended to prove notice, and since they offered no other evidence to prove that Catalina's boats were actually defective, they have failed to demonstrate an abuse of discretion.

■ In any event, we note that the trial court did not categorically exclude the proffered evidence. It expressly noted that its ruling was not absolute and that it might later accept the letters if Catalina opened the door to their admission. In light of this ruling, we find no merit in the Pierces' complaint that the pretrial ruling denied them "the opportunity to confront foundation or hearsay objections as they arose in the course of the case." [34].

### C. The Magnuson–Moss Act Will Govern the Pierces' Award of Attorney's Fees on Remand.

Before trial, Catalina made an offer of judgment for $38,000. The Pierces rejected the offer. After trial, the court determined that Catalina's offer exceeded the value of the jury's verdict. Relying on the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act,[35] the court awarded the Pierces full reasonable attorney's fees to the time of the offer of judgment; applying Alaska Civil Rules 68 and 82, it awarded post-offer attorney's fees to Catalina. Subtracting Catalina's fee award from the Pierces', the court calculated a net fee award of $510 for the Pierces.

Both parties challenge various aspects of the superior court's award of fees. But our decision that the Pierces are entitled to recover consequential damages on remand moots all but one of the parties' arguments. Catalina contends that the superior court erred in ruling that the Magnuson–Moss Act's attorney's fee provision governs the Pierces' award of fees; we address this issue because it is likely to arise again on remand.

Catalina asserts that the Magnuson–Moss Act's fee provisions do not apply to this case because the warranty at issue was a limited rather than a full warranty. But this asser-

33. *See Hutchins v. Schwartz,* 724 P.2d 1194, 1197 (Alaska 1986).

34. *Cf. Bliss v. Bobich,* 971 P.2d 141, 145 (Alaska 1998). ("In arguing that the trial court erroneously excluded their proposed evidence, the Blisses focus primarily on the pretrial order itself. But they are mistaken in claiming that the order excluded evidence. It excluded nothing categorically. Rather, it temporized: it protected against jury prejudice by precluding mention of the evidence to the jury until its admissibility was determined; but at the same time it allowed the Blisses to make specific offers of proof on an issue-by-issue basis when they actually sought to admit their evidence. This approach seems eminently sensible. We find no abuse of discretion.").

35. Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–2312 (1994).

tion conflates two separate provisions of the Act.

Section 2310(d) of the Magnuson–Moss Act authorizes private actions for breaches of written consumer warranties, providing that "a consumer who is damaged by the failure of a ... warrantor ... to comply with any obligation under this chapter, or under a written warranty ... may bring suit for damages and other legal and equitable relief."[36] It also authorizes consumers who prevail on a suit brought under its provisions to recover costs and expenses, including attorney's fees.[37] A separate section of the Act, section 2304, establishes minimum federal standards that warrantors of consumer products are obligated to meet.[38]

In arguing the Magnuson–Moss Act does not apply to the Pierces' action, Catalina points out that most courts have concluded that the minimum standards set out in section 2304 of the Act apply only to full warranties.[39] Contending that section 2310's provision allowing consumers to sue for violations of "any obligation under this chapter" refers to the obligations set out in section 2304, Catalina reasons that section 2310 does not allow consumers to sue for breaches of limited warranties. Because the warranty at issue here is a limited warranty, Catalina concludes that the Magnuson–Moss Act does not govern the Pierces' right to attorney's fees.

But Catalina reads section 2310 too narrowly; its language authorizes consumer suits for non-compliance with two types of obligations: "the failure of a ... warrantor ... to comply with any obligation under this chapter, *or under a written warranty*."[40] Courts and commentators have generally recognized that this provision confers a private right of action to consumers who suffer a breach of a limited warranty.[41] These courts rely on state law to provide the proper measure of damages for the breach, but they rely on section 2310 in awarding attorney's fees.[42] This court has taken the same approach on at least one prior occasion, although the limited nature of the warranty in that case was not at issue.[43]

Thus, the precise question here is not whether Catalina failed to comply with an obligation imposed under section 2304 but whether the company failed to comply with an obligation "under a written warranty,"[44] as allowed in section 2310. Under section 2301(6)(B) of the Magnuson–Moss Act, the term "written warranty" encompasses "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the

**36.** 15 U.S.C. § 2310(d)(1).

**37.** *See* 15 U.S.C. § 2310(d)(2).

**38.** *See* 15 U.S.C. § 2304.

**39.** *See, e.g., MacKenzie v. Chrysler Corp.,* 607 F.2d 1162, 1167 n. 7 (5th Cir.1979).

**40.** 15 U.S.C. § 2310(d)(1) (emphasis added).

**41.** *See, e.g., Guerdon Indus. v. Gentry,* 531 So.2d 1202, 1209–10 (Miss.1988) (awarding attorney's fees under section 2310(d) for breach of express limited warranty); *Ventura v. Ford Motor Corp.,* 180 N.J.Super. 45, 433 A.2d 801, 808–09 (1981) (holding that a limited warranty for repair or replacement fell within the Magnuson–Moss Act's definition of "written warranty" which is covered by section 2310(d)'s provision for suit by a consumer who has suffered from a breach of a written warranty); *Gochey v. Bombardier, Inc.,* 153 Vt. 607, 572 A.2d 921, 924 (1990) (refund of the purchase price for breach of limited warranty is not mandated by the Magnuson–Moss Act but is consistent with it); *see also* Christopher Smith,

*Private Rights of Action Under the Magnuson–Moss Warranty Act,* 346 PLI/Comm 223, 225 (Apr. 1, 1985) ("Magnuson–Moss ... creates a private right of action for breach of warranty where there is a breach of a promise to make repairs.").

A few courts appear to have concluded that the Magnuson–Moss Act does not provide for the enforcement of limited warranties. *See, e.g., Bush v. American Motors Sales Corp.,* 575 F.Supp. 1581, 1583 (D.Colo.1984) (plaintiffs must allege specific violations of the standards set forth in the Magnuson–Moss Act in order to state a proper claim). But their discussion of the point is conclusory and unpersuasive.

**42.** *See, e.g., Ventura,* 433 A.2d at 810, 812.

**43.** *See Universal Motors v. Waldock,* 719 P.2d 254, 260 (Alaska 1986) (upholding attorney's fees awarded under Magnuson–Moss Act for breach of a limited warranty).

**44.** *Id.*

event that such product fails to meet the specifications set forth in the undertaking." [45] Because Catalina's limited warranty to the Pierces falls within this definition, we conclude that on remand they will be entitled to an award of attorney's fees under the Magnuson–Moss Act.

## IV. CONCLUSION

For these reasons, we VACATE the judgment and REMAND for a trial to determine the amount of the Pierces' consequential damages.

CARPENETI, Justice, not participating.