CATALINA YACHTS, Appellant,

v.

Jim and Karen PIERCE, Appellees.

No. S–10720.

Supreme Court of Alaska.

Jan. 14, 2005.

Eric A. Kueffner, Faulkner Banfield, P.C., Juneau, for Appellant.

No appearance by Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Jim and Karen Pierce rejected an offer of judgment made by Catalina Yachts under Alaska Civil Rule 68 in a breach of warranty case. The superior court denied Catalina's later motion for attorney's fees and costs under Alaska Civil Rule 68, holding that the rule did not apply and was preempted by the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act. Because we conclude that Alaska Civil Rule 68 applies, we reverse and remand.

## II. FACTS AND PROCEEDINGS

The underlying facts of this case are set out in *Pierce v. Catalina Yachts*, a breach of contract and warranty case that came before us in 2000.[1] In summary, Jim and Karen Pierce purchased a new fiberglass sailboat from Catalina Yachts in 1992. Under the warranty, Catalina was responsible for re-

---

1. 2 P.3d 618, 620 (Alaska 2000).

pairing any blisters in the gel coat of the boat that occurred within a year of the boat being placed in the water. The Pierces claimed that their boat's hull developed blisters and that Catalina was responsible for repairing the hull under the warranty. The Pierces were unable to convince Catalina that the gel coat needed to be replaced.[2] They filed suit, bringing claims under the federal Magnuson–Moss Warranty Federal Trade Commission Improvement Act[3] and under Alaska law.

Before trial, in January 1996, the Pierces rejected a $38,000 offer of judgment from Catalina, made under Alaska Civil Rule 68.[4] Following trial, the jury awarded the Pierces $12,445 as the reasonable cost of repair.[5] The superior court then calculated the value of the Pierces' judgment using the formula we laid out in *Farnsworth v. Steiner.*[6] Magnuson–Moss provides for awards of attorney's fees and costs for prevailing consumers like the Pierces;[7] the superior court calculated the Pierces' fees and costs under the federal law through the date of the offer ($22,236). It then added that figure to the jury award ($12,445) and pre-judgment interest ($1,964), for a total judgment of $36,645, less than Catalina's offer. Under Rule 68, the Pierces were therefore barred from receiving post-offer fees and costs and Catalina was entitled to an award of post-offer fees and costs as well a reduced pre-judgment interest rate.[8] The court awarded the Pierces $35,721 as their judgment as recalculated under Rule 68, awarded Catalina $35,211 in post-offer fees and costs, and offset the two amounts to reach a net award of $510 for the Pierces. Because we held on appeal that the Pierces were entitled to recover consequential damages on remand, we did not address the fee awards, apart from concluding that Magnuson–Moss entitled the

Pierces to an award of attorney's fees.[9] Following trial on remand, the jury determined that the Pierces suffered no consequential damages, and Superior Court Judge Larry C. Zervos agreed that the Pierces' damages claim was "frivolous."

Catalina moved for attorney's fees and costs under Alaska Civil Rule 68. The court looked first to Magnuson–Moss, which states:

> If a consumer finally prevails in any action brought under ... this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action....[10]

The court determined that Catalina, as a manufacturer and not a "consumer," was not entitled to attorney's fees and costs. The court also declared that the underlying policy goals of Magnuson–Moss do not support allowing defendants to recover attorney's fees because allowing a fee award to a manufacturer "would run counter" to the Act's purpose of encouraging consumers to pursue legal action to protect their rights under a warranty. The court therefore refused to award Catalina post-offer fees.

The court awarded the Pierces fees and costs of $20,000. When added to interest ($10,460.76) and the jury's original award ($12,445), this resulted in a total judgment of $42,905.76.[11]

Catalina filed a motion for reconsideration, arguing that it was seeking fees not under Magnuson–Moss but under Alaska Civil Rules 68 and 82, that the language of Rule 68

---

2. *Id.*

3. 15 U.S.C. § 2312 (1998).

4. *Pierce,* 2 P.3d at 625.

5. *Id.* at 620.

6. 601 P.2d 266, 269–70 n. 4 (Alaska 1979).

7. 15 U.S.C. § 2310(d)(2) (1998).

8. *See* Alaska R. Civ. P. 68 (applicable to cases filed before August 7, 1997).

9. *Pierce,* 2 P.3d at 625–27.

10. 15 U.S.C. § 2310(d)(2) (1998).

11. Because the superior court determined that Rule 68 did not apply, it did not use the *Farnsworth* formula for comparing the offer and the Pierces' judgment.

is mandatory, and that Rule 68 and Magnuson–Moss are not incompatible. The superior court denied Catalina's motion, concluding that "the federal statute, federal preemption and the reasoning of the majority of courts faced with this issue leave no room to award fees to Catalina."

Catalina appeals the superior court's decision.

## III. DISCUSSION

### A. Standard of Review

 Whether Rule 68 applies in a given case is a question of law.[12] Whether a federal statute preempts a state court rule is also a question of law.[13] We review questions of law de novo, "adopting the rule of law most persuasive in light of precedent, reason, and policy."[14]

### B. Rule 68 Applies in This Case.

 Catalina moved for attorney's fees and costs under Alaska Rule of Civil Procedure 68(b) (applicable to cases filed before August 7, 1997), which provided in relevant part:

> If the judgment finally rendered by the court is not more favorable to the offeree than the offer, the prejudgment interest accrued up to the date judgment is entered shall be adjusted as follows: (1) if the offeree is the party making the claim, the interest rate will be reduced by the amount specified in AS 09.30.065 and the offeree must pay the costs and attorney's fees incurred after the making of the offer (as would be calculated under Civil Rules 79 and 82 if the offeror were the prevailing party). The offeree may not be awarded

costs or attorney's fees incurred after the making of the offer.

Catalina would not be eligible for fees under Alaska Civil Rule 82, which gives way to a "specific statutory scheme for attorney's fees" like that in Magnuson–Moss.[15] Rule 68's reference to Rule 82, however, does not prevent a fee award. Rule 68 refers to Rule 82 only for the purpose of calculating the amount of the award. The operative language of Rule 68 is mandatory, providing that "the offeree *must* pay the costs and attorney's fees incurred after the making of the offer." It does not condition this requirement on the offeree's qualification for an award under any other rule.

 The superior court found that the attorney's fee provisions of Magnuson–Moss conflict with Rule 68. Under the court's reasoning, the Supremacy Clause of the federal constitution[16] thus required that Magnuson–Moss preempt Rule 68, leaving the court with authority to award fees only to the Pierces, not to Catalina. "Federal law preempts [a] state [court rule] if Congress expressly or implicitly declares the state [rule] preempted or if the state [rule] conflicts with the federal law to the extent that (a) it is impossible to comply simultaneously with both or (b) the state [rule] obstructs the execution of the purpose of the federal [law]."[17] Magnuson–Moss contains no express preemption of state court rules governing attorney's fee awards.[18] We therefore turn to the question whether it conflicts with Alaska Civil Rule 68.

### 1. There is no direct conflict between Rule 68 and Magnuson–Moss.

 Magnuson–Moss authorizes awards of attorney's fees only to prevailing "consum-

**12.** *Van Deusen v. Seavey,* 53 P.3d 596, 603 (Alaska 2002).

**13.** *Tlingit–Haida Reg'l Elec. Auth. v. State,* 15 P.3d 754, 761 (Alaska 2001); *Andrews v. Alaska Operating Eng'rs–Employers Training Trust Fund,* 871 P.2d 1142, 1143–44 (Alaska 1994).

**14.** *Kodiak Island Borough v. Roe,* 63 P.3d 1009, 1012 n. 6 (Alaska 2003) (citing *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**15.** *Enders v. Parker,* 66 P.3d 11, 17 (Alaska 2003) ("Rule 82 provides for an award of attorney's

fees to the prevailing party '[e]xcept as otherwise provided by law.' ") (quoting Alaska R. Civ. P. 82(a)).

**16.** U.S. Const. art. VI.

**17.** *Interior Reg'l Hous. Auth. v. James,* 989 P.2d 145, 149 (Alaska 1999) (quotation marks omitted).

**18.** Magnuson–Moss's guidance on its effect on other laws is contained in 15 U.S.C. § 2311, whose only preemptive provision overrides certain state warranty laws. 15 U.S.C. § 2311(c).

ers." [19] In a warranty action, the consumer will generally, if not always, be the plaintiff; the attorney's fee provision does not mention prevailing defendants or parties who do not prevail at trial. Civil Rule 68, on the other hand, allows attorney's fees to defendants who do not prevail at trial. Two provisions are in direct conflict when they cannot both be followed—when complying with one necessarily means violating the other.[20] If Magnuson–Moss, by authorizing awards only to consumers, *bars* fee awards to defendants, then Rule 68 cannot be followed without violating the federal law. But the Act's failure to authorize awards to defendants is not the same as a bar on such awards when they are allowed by another authority. This silence distinguishes Magnuson–Moss from other federal laws that place limits on the circumstances in which defendants can receive fee awards and that therefore may conflict with state fee provisions. For example, in *State v. Golden's Concrete Co.*, the Colorado Supreme Court found a conflict between a state law mandating fee awards to defendants when the case against them is dismissed before trial and 42 U.S.C. § 1988, which allows fee awards to defendants *only* when the plaintiff's suit 'was vexatious, frivolous, or was brought to harass or embarrass the defendant.' " [21] Magnuson–Moss does not authorize awards to defendants, but neither does it limit them as § 1988 does.

■ A state court rule is presumed valid in the face of a potentially conflicting federal law.[22] In light of this principle, we do not read Magnuson–Moss's silence as a bar on awards to defendants. Therefore, it is possible to follow both the state rule and the federal act without violating either. A court could, as the superior court did after the first trial, award the prevailing plaintiff full fees and costs, then offset that award against the defendant's post-offer fees and costs while also giving the defendant the other benefit of Rule 68, a reduced pre-judgment interest rate. There is no direct conflict between Magnuson–Moss and Rule 68.

## 2. Rule 68 does not obstruct achievement of the purpose of Magnuson–Moss.

The harder question is whether following Rule 68 would obstruct the execution of the federal policy embodied in the Magnuson–Moss attorney's fee provisions. The federal policy is to encourage consumers with meritorious claims to bring them, even when a plaintiff's recovery would not cover the attorney's fees incurred.[23] Under Rule 68, those plaintiffs may end up obliged to pay part of their adversaries' fees if they turn down an offer of judgment. If this possibility is sufficient to discourage plaintiffs from bringing suits, then following Rule 68 would obstruct achievement of the purposes of Magnuson–Moss.

The United States Supreme Court's decision in *Marek v. Chesny* [24] makes clear that this conflict does not exist. When a plaintiff rejects an offer of judgment larger than her eventual trial recovery, the federal version of Rule 68 allows post-offer costs to the defendant and bars the plaintiff from recovering

19. 15 U.S.C. § 2310(d)(2) (1998).

20. *Webster v. Bechtel, Inc.*, 621 P.2d 890, 901 (Alaska 1980).

21. 962 P.2d 919, 926 (Colo.1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (emphasis added); *see also Garan, Inc. v. M/V Aivik*, 907 F.Supp. 397, 399 (S.D.Fla.1995) (finding conflict between federal maritime law and state offer of judgment statute because under federal maritime law "absent specific federal statutory authorization for an award of attorneys' fees, the prevailing party is generally not entitled to those fees"). *But see Moran v. City of Lakeland*, 694 So.2d 886, 887 (Fla.Dist.App.1997) (finding conflict between state offer of judgment statute and federal law where federal statute authorized fee awards for defendants in actions brought in bad faith without expressly limiting them to such actions).

22. *See Johnson v. Fankell*, 520 U.S. 911, 918, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997).

23. *See State Farm Fire & Cas. Co. v. Miller Elec. Co.*, 231 Ill.App.3d 355, 172 Ill.Dec. 890, 596 N.E.2d 169, 171 (1992); *Ventura v. Ford Motor Corp.*, 180 N.J.Super. 45, 433 A.2d 801, 812 (1981).

24. 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).

such costs.[25] In *Marek*, the Supreme Court had to decide whether a plaintiff who was barred by the federal Rule 68 from recovering post-offer costs could still receive the full attorney's fees he was allowed under 42 U.S.C § 1988, the fee provision of the substantive statute underlying the suit.[26] It therefore had to determine whether the rule's term "costs" encompassed attorney's fees. The Court determined that as long as the substantive statute underlying the suit includes attorney's fees in its definition of costs, then the federal Rule 68 does as well.[27] The plaintiff was thus denied fees that he would have recovered under § 1988.

The Supreme Court then faced the question whether its reading of the rule to include attorney's fees in some circumstances would "frustrate Congress'[s] objective ... of ensuring that civil rights plaintiffs obtain effective access to the judicial process" through § 1988, which allows attorney's fees to prevailing civil rights plaintiffs.[28] The question in *Marek* is closely analogous to the question at the heart of our preemption analysis in the present case. The *Marek* Court asked whether federal Rule 68, by cutting back on plaintiffs' fee awards, undermines and conflicts with § 1988, which allows full fees. We ask whether Alaska's Rule 68, by forcing a prevailing plaintiff to pay a defendant's post-offer fees, undermines Magnuson–Moss, which allows fees only to plaintiffs.

The Supreme Court in *Marek* concluded that there is no conflict between federal Rule 68 and § 1988: "[W]e are not persuaded that

shifting the postoffer costs to [the plaintiff] in these circumstances would in any sense thwart its intent under § 1988.... Section 1988 encourages plaintiffs to bring meritorious civil rights suits; Rule 68 simply encourages settlements. There is nothing incompatible in these two objectives." [29]

Following the Supreme Court's reasoning, we hold that there is no conflict between Alaska Civil Rule 68 and Magnuson–Moss. Forcing plaintiffs to bear their own costs, as in *Marek*, and requiring them to pay the other party's fees, as in the case before us, have the same general effect—reducing the benefit that the underlying statute would give the plaintiffs. This reduction could conflict with the underlying statute's goal in the following scenario: Injured persons might be encouraged to bring a claim by the prospect of a fee award provided by the underlying statute. But they might then consider that if they reject an offer, go to trial, and win less than the offer, Rule 68 will reduce their award. The attorney's fee provision that had encouraged them to file suit looks somewhat less appealing. This might convince them not to bring their meritorious claim, defeating the purpose of the fee provision.

This response seems unlikely, however. *Marek* holds that leaving plaintiffs responsible for their own costs does not reduce their incentive to bring suit to the extent that it defeats the fee provision's purpose and creates a conflict. And there is no suggestion that requiring prevailing plaintiffs to pay the

---

25. Fed.R.Civ.P. 68.

26. 473 U.S. at 3–4, 105 S.Ct. 3012.

27. *Id.* at 9, 105 S.Ct. 3012. Federal courts, perhaps responding to concerns that "defendants ... found to have violated plaintiff's rights" would get fees from non-frivolous plaintiffs, 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 3006.2, at 131–32 (2d ed.1997), interpret *Marek* to include fees in post-offer cost awards only for defendants who would qualify for fees under the suit's substantive statute. *See, e.g., Crossman v. Marcoccio*, 806 F.2d 329, 333–34 (1st Cir. 1986). This process of looking to the underlying statute to determine whether costs include attorney's fees is irrelevant in the present case. Alaska's Rule 68 explicitly includes the award of attorney's fees among the consequences of reject-

ing an offer that is greater than the award obtained at trial. There is therefore no need to look to the underlying statute to determine the definition of costs as there was in *Marek*. We look to the underlying statute only to determine whether *it* conflicts with Rule 68.

28. *Marek*, 473 U.S. at 10, 105 S.Ct. 3012 (internal quotation marks and citations omitted).

29. *Id.* at 10–11, 105 S.Ct. 3012 (emphasis added); *see also Clayton v. Bryan*, 753 So.2d 632, 634–36 (Fla.Dist.App.2000) (Harris, J., dissenting) ("[T]here is nothing in the federal [Fair Debt Collection Protection Act], nor is there a reason within the policy behind the federal act, that would preclude a state from requiring that all parties in litigation ... realistically evaluate their case ... and to accept a settlement offer commensurate with their claim.").

defendant's post-offer, non-fee costs under-mines Magnuson–Moss. Requiring the plaintiff to pay the defendant's post-offer fees is not so much more onerous that it should be treated differently. While it does reduce the incentive provided by Magnuson–Moss, applying Rule 68 does not go so far as to defeat its purposes. The two provisions are not in conflict.

Our decision in *Turner v. Alaska Communications Systems Long Distance, Inc.*[30] is not to the contrary. In *Turner*, we held that absent class members with relatively small claims who remain passive throughout the litigation are not liable for their adversary's attorney's fees under Alaska Rule of Civil Procedure 82 if the class loses. We reasoned that the threat of such liability would discourage absent class members from pursuing the action and lead them to opt out, leaving them without a remedy.[31] In light of *Turner's* concerns, we must be careful about allowing fee-shifting provisions to undercut provisions meant to encourage plaintiffs to bring meritorious claims. But while we held in *Turner* that absent class members are not liable for attorney's fees if the class loses, we clarified that our decision did not prevent the award of attorney's fees against the *named* class representatives: "[O]ur ruling does not eliminate Rule 82 attorney's fees in class actions; it simply limits Rule 82's possible reach to named parties, meaning that a [defendant] who has been forced to litigate in order to secure his or her rights will be reimbursed in part for litigation expenses."[32] Thus, the dissent's pronounced reliance on *Turner* to resolve the question in this case is misplaced.

Rule 68 therefore applies in this case. The superior court calculated the amount of the Pierces' judgment following the first trial, first for the purpose of comparing it to Catalina's offer and then under Rule 68 in order to determine the final amount they were owed. At the second trial, the jury awarded no new damages, so its basic award was not increased. And because the Pierces were thus not prevailing parties, they can get no further fees or costs under Magnuson–Moss. Assuming that the superior court's calculations were correct at the outset, Catalina's offer is still larger than the Pierces' award and the superior court's calculation of the value of the Pierces' award under the Rule 68 formula remains accurate. The superior court must still determine the fees and costs incurred by Catalina since the original calculation following the first trial and then recalculate the offset between the parties' awards.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the superior court's decision not to apply Alaska Civil Rule 68 and the judgment that followed, and REMAND for proceedings consistent with this opinion.

CARPENETI, Justice, not participating.

BRYNER, Justice, dissenting.

BRYNER, Justice, dissenting.

I disagree with this opinion and would affirm the superior court's ruling on fees. I would reach this conclusion under our own civil rules, without deciding the issue of federal preemption.

As I read them, Civil Rules 68 and 82 would not support an award of fees to Catalina. Civil Rule 68 expressly required Catalina's post-offer fees to be determined by looking to the fees that Catalina would have recovered under Rule 82 if it had prevailed in this action: "[I]f the offeree is the party making the claim, . . . the offeree must pay the costs and attorney's fees incurred after the making of the offer (*as would be calculated under Civil Rules 79 and 82 if the offeror were the prevailing party*)."[1] If Catalina had prevailed against the Pierces, Rule 82 would have precluded it from recovering any prevailing-party fees. Specifically, Rule 82(a) provides: "*Except as otherwise provided by law* or agreed to by the parties, the prevailing party in a civil case shall be

---

**30.** 78 P.3d 264 (Alaska 2003).

**31.** *Id.* at 268.

**32.** *Id.* at 269.

**1.** Alaska R. Civ. P. 68(b)(1) (emphasis added).

awarded attorney's fees calculated under this rule."[2] Here, the issue of prevailing-party fees is in fact "otherwise provided by law": the Magnuson–Moss Act does not permit fee awards to prevailing defendants, expressly providing for awards only to a prevailing "consumer."[3] Since Rule 82(a) gives controlling effect to the Magnuson–Moss Act's fee provision and Rule 68 expressly limits post-offer fees to those that "would be calculated under Civil Rule[ ] . . . 82 if the offeror were the prevailing party,"[4] Catalina has no right to recover post-offer fees under Rule 68.

Today's opinion reaches the contrary conclusion by reading Rule 68(b)(1) as if it referred only to the mechanical process of calculating the amount of fees, as set out in Rule 82(b). But this interpretation is textually implausible. If Rule 68(b)(1) had simply been intended to direct how the amount of the offeror's award should be determined, then it could easily have pointed specifically to Civil Rule 82(b), which expressly deals with the "Amount of Award[s]" made under that rule.[5] Instead Rule 68(b)(1) was phrased broadly to require that fees be calculated under "Rule 82." This broad reference to Rule 82 in its entirety encompasses subsection 82(a). By referring to fees "calculated" under Rule 82, moreover, Rule 68(b)(1) similarly points beyond Rule 82(b)'s "Amount of Awards" provision, since Rule 82(a) is the only subsection of Rule 82 that uses the word "calculated."

The opinion's narrow reading of Rule 68(b)(1) suffers from logical as well as textual problems. By reading Rule 68(b)(1) to be mandatory and interpreting it to completely exclude Rule 82(a)'s "otherwise provided" exception, the opinion necessarily suggests the improbable conclusion that the offer-of-judgment rule "must"[6] prevail over all exceptions

set out in Rule 82(a)—that it would prevail, for example, even over a freely negotiated contract to waive recovery under the offer-of-judgment rule (an agreement that would otherwise fall within Rule 82(a)'s exception for provisions "otherwise . . . agreed to by the parties," which the opinion finds irrelevant for purposes of applying Rule 68(b)(1)).[7]

By contrast, interpreting Rule 68(b)(1)'s reference to Rule 82 as one that encompasses all provisions of Rule 82 offers the advantages of being textually faithful to Rule 68's language and logically sound. By looking to the underlying cause of action to determine whether Rule 68 requires the offeree to pay fees, this interpretation aligns Alaska's offer-of-judgment provision with the approach adopted by the United States Supreme Court in *Marek v. Chesny*[8] and numerous federal cases interpreting *Marek*.[9] Wright and Miller approvingly describes the prevailing federal approach adopted in *Marek* as follows:

> [T]he Supreme Court was careful to specify in Marek that only "properly awardable" costs were to be awarded to defendants, and the lower courts have properly held that this means that civil-rights defendants can recover their fees as a part of costs under Rule 68 only if they can satisfy the otherwise-applicable standard for recovery by defendants.[10]

Interpreting Rule 68 to embody this approach seems especially appropriate from a historical perspective: Rule 68(b)(1)'s language requiring an offeror's fees to be awarded "as would be calculated under Civil Rule[ ] . . . 82 if the offeror were the prevailing party" was added to Rule 68 in 1987, soon after *Marek* was decided. The timing of this amendment suggests that it meant to follow *Marek*'s approach of determining the offeror's entitlement to attorney's fees by looking to the statute governing the underly-

---

2. Alaska R. Civ. P. 82(a) (emphasis added).

3. 15 U.S.C. § 2310(d)(2) (1998).

4. Alaska R. Civ. P. 68(b)(1).

5. Alaska R. Civ. P. 82(b).

6. Alaska R. Civ. P 68(b)(1) (pre-August 7, 1997).

7. Alaska R. Civ. P. 82(a).

8. 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).

9. *See* above, Op. at 130, n.27.

10. 12 Wright, Miller & Marcus, Federal Practice and Procedure § 3006.2, at 131 (1997) (internal footnotes omitted).

ing cause of action. This interpretation similarly comports with our own case law in analogous situations, which has consistently recognized that specific fee provisions in statutes creating substantive causes of action ordinarily supersede the general provisions of Rule 82.[11] Further, as I explain below, this interpretation also advances the Magnuson–Moss Act's primary goal of encouraging consumers to pursue small warranty claims, thus avoiding the troubling federal preemption problems caused by the opinion's narrow reading of Rule 68.

For all these reasons, I would conclude that, because Rule 82(a) would bar Catalina from recovering prevailing-party fees if it prevailed in this action, Rule 68(b)(1) did not entitle Catalina to an award of post-offer fees. While this reading of Rule 68 would make it unnecessary to resolve the question of federal preemption, the opinion's resolution of that issue requires me to address the point.

Initially, as to the first prong of the federal preemption test, I disagree with the opinion's premise that the Magnuson–Moss Act's "failure to award fees to defendants" amounts to "silence" on the issue of a defendant's right to prevailing-party fees, and so "distinguishes Magnuson–Moss from other federal laws that place limits on the circumstances in which defendants can receive fee awards and that therefore may conflict with state fee provisions."[12] After all, Magnuson–Moss is hardly silent on the issue of prevailing-party fees. Unlike the Civil Rights Act's language at issue in *Marek*, the Magnuson–Moss Act's language expressly allows prevailing-party

fees to be awarded only to a "claimant."[13] Since federal law has no general prevailing-party fee rule comparable to Rule 82, Magnuson–Moss's authorization of fees only to claimants effectively precludes fee awards to defendants completely. By comparison, the statutory language considered in *Marek* only partly precluded fee awards to defendants, expressly allowing fees to be awarded against plaintiffs in frivolous cases. I fail to see how the Magnuson–Moss Act's express language eliminating *all* circumstances in which defendants may recover fees can realistically be viewed as creating less conflict with the opinion's reading of Rule 68 than the Civil Rights Act's language, which merely eliminates *some* circumstances.

But even if the first prong of the opinion's preemption analysis were correct, its second-prong analysis would remain problematic. The opinion concludes that its interpretation of Rule 68 does not obstruct the Magnuson–Moss Act's purpose. In reaching this conclusion, the opinion leans heavily on *Marek*, declaring that case to be "closely analogous."[14]

Yet as the opinion itself acknowledges, the issue addressed in *Marek* is readily distinguishable from the one presented here:

> The *Marek* Court asked whether federal Rule 68, by cutting back on plaintiffs' fee awards, undermines and conflicts with § 1988, which allows full fees. We ask whether Alaska's Rule 68, by forcing a prevailing plaintiff to pay a defendant's post-offer fees, undermines Magnuson–

---

11. *See, e.g., Enders v. Parker*, 66 P.3d 11, 17 (Alaska 2003) (holding that personal representative in will contest barred from claiming fees as prevailing party under Rule 82 because AS 13.16.435 expressly governs fee awards in such cases: "If a specific statutory scheme for attorney's fees exists, Civil Rule 82 does not apply."); *see also Moody–Herrera v. State*, 967 P.2d 79, 90 (Alaska 1998) (holding that Rule 82 governed fee award to prevailing defendant in action under Alaska Human Rights Act because Act included no fee provision, but suggesting that Rule 82 would be inapplicable if provision similar to federal civil rights act fee provision had existed); *cf. Crittell v. Bingo*, 83 P.3d 532, 536 (Alaska 2004) (allowing fee award under Rule 82 in will contest when neither contestant could claim fees as estate representative under AS 13.16.435); *Bobich*

*v. Hughes*, 965 P.2d 1196, 1200 (Alaska 1998) (stating that statutory attorney's fees provision awarding full fees ordinarily takes precedence over Rule 82 provision awarding partial attorney's fees); *Whaley v. Alaska Workers' Comp. Bd.*, 648 P.2d 955, 959 (Alaska 1982) (holding that prevailing employer could not obtain attorney's fees because granting such fees would undermine purposes of Alaska Workers' Compensation Act and limit claimant's ability to seek appellate relief).

12. Op. at 128–129.

13. 15 U.S.C. § 2310(d)(2) (1998).

14. Op. at 130.

Moss, which allows fees only to plaintiffs.[15]

The opinion nonetheless dismisses this distinction as insignificant, summarily observing that "[f]orcing plaintiffs to bear their own costs, as in *Marek*, and requiring them to pay the other party's fees, as in the case before us, have the same general effect—reducing the benefit that the underlying statute would give the plaintiffs." [16] Yet this observation begs the critical question: does this "general" sameness of effect mask specific distinctions that make a practical difference? It seems to me that the answer is yes.

It may be true at some abstract level that requiring Magnuson–Moss claimants to bear their own costs would "have the same general effect" as requiring them to pay defendants' post-offer fees. There is in fact a vast functional difference between limiting how much a claimant can recover upon winning a judgment against the defendant and exposing the claimant to a new risk of having to pay a judgment in the defendant's favor—even if the claimant prevails on the merits. The former can accurately be seen as "reducing the benefit." But surely the latter cannot: it amounts instead to an affirmative detriment, and a substantial one at that, achieving its effect not by reducing something that the claimant would otherwise get but by exposing claimants to a new form of economic hardship and pain. And in the small-damages universe of consumer warranty actions, this threat of a new liability will make worlds of difference.

Although it fleetingly acknowledges the Magnuson–Moss Act's primary goal of encouraging consumers to pursue small warranty claims that would otherwise be precluded by high litigation costs,[17] the opinion ignores the disproportionate impact of imposing new liability on such risk-averse claimants, as well as the consequent danger of discouraging meritorious claims. We recently recognized this danger in *Turner v. Alaska Communications Systems Long Distance,*

*Inc.,* where we described the consequences of holding absent plaintiffs in small consumer class actions responsible for the defendants' prevailing-party fees, emphasizing the very real risk of deterring legitimate claims:

A rule that permits the imposition of attorney's fees on absent class members who stand to gain such small monetary compensation will encourage opt-outs and have a chilling effect on this important use of the class action device. As a result, some class members with legitimate claims will be left without a remedy.[18]

I find it hard to square our recent sighting of this danger in *Turner* with the court's perception that its ruling in the present case will cause no damage to the incentives offered by Magnuson–Moss. The court tries to distance today's opinion from *Turner* by observing that the fee exemption in *Turner* only extended to absent class members and did not eliminate fee liability for named parties.[19] But this observation misses the point of our ruling in *Turner* and misperceives its relevance here.

As the court itself recognizes in today's opinion, *Turner* stands for the proposition that fee-shifting poses a significant risk of discouraging potential claimants with meritorious small claims and should thus be avoided when it would undercut a policy or law that is "meant to encourage plaintiffs to bring meritorious claims." [20] In *Turner*, we found a strong public policy encouraging broad participation in class actions; to avoid hampering this policy by frightening potential class members out of pending class actions, we exempted passive class members from potential Rule 82 fees. But this policy of encouraging broad class participation only applies to class actions actually filed; it does not more broadly strive to encourage the filing of new class-action claims. And its limited goal of *broadening* participation in existing class actions would hardly be served by a fee exemption covering plaintiffs who are already

---

**15.** Op. at 130.

**16.** Op. at 130.

**17.** Op. at 129–130.

**18.** 78 P.3d 264, 268 (Alaska 2003).

**19.** Op. at 131.

**20.** *Id.*

actively participating in the action. Considering the specific policy at issue in *Turner*, then, refusing to exempt named class representatives from the requirements of Rule 82 made perfect sense.

But here, in contrast to *Turner*, the policy at issue *does* actively seek to encourage new claims: specifically, the Magnuson–Moss Act is designed to encourage the filing of small consumer warranty actions, and it strives to attain this goal by creating a one-sided fee-shifting provision that favors the claimant. In this setting, then, the proposition we recognized in *Turner*—that fee-shifting must be avoided when it undercuts a provision meant to encourage new claims—yields the opposite result: applying Rule 68 in cases like this will directly erode Magnuson–Moss's goal of encouraging otherwise reluctant consumers to bring meritorious warranty claims. Indeed, the chilling effect we sought to avoid in the class-action setting of *Turner* can only increase in the setting of individual consumer claims, where the added risk of new liability for opposing-party fees cannot be spread to other class members.

As other courts have recognized, studies suggest that individuals who have small claims are unusually vulnerable to this kind of chilling effect, particularly when litigation costs might exceed the size of their claims.[21] This point is particularly important in light of the Magnuson–Moss Act's central purpose: to promote new claims by eliminating the effects of high litigation costs on litigants whose "individual claims are too insignificant to command representation by counsel or to warrant all the other expenses of invoking the judicial process."[22]

Today's opinion threatens to defeat this purpose completely. Although it nominally affects only those Magnuson–Moss claimants who decline reasonable settlement offers, the opinion's actual effects will extend much farther. As the opinion interprets Rule 68, it will regularly expose prospective Magnuson–Moss claimants to a predictable and substantial risk of sizable new litigation costs for defendants' post-offer fees. In practical terms, this will send a mixed message to all potential claimants—those with strong and weak claims alike: it will tell them that the Magnuson–Moss Act lets them file their claims freely; but at the same time it will put them on notice that they should be prepared to accept the first offer of judgment advanced, or face new litigation costs that might make their claims far less than worthless. Faced with a near-certain prospect of early and low offers, most consumers with potentially meritorious small-damages-claims will simply give up without bothering to file, concluding that the potentially high costs of securing a reasonable judgment are simply not worth the prohibitive risk.[23]

In my view, then, the opinion's reading of Rule 68 conflicts with the Magnuson–Moss Act's primary goal and so runs aground on federal preemption. The need to avoid this conflict with federal law provides another good reason for interpreting Rule 68(b)(1) as precluding defendants from recovering post-offer fees unless Rule 82(a) would allow them an award as prevailing parties.

---

**21.** *See, e.g., Covenant Mutual Ins. Co. v. Young,* 179 Cal.App.3d 318, 326 n. 9, 225 Cal.Rptr. 861 (Cal.App.2d Dist.1986) ("If the costs are large in relation to the stakes they will be a more important factor in the litigants' decision making and whether and how these costs are shifted will influence litigation behavior more dramatically than in high stakes—low cost cases"); *see also* Rowe, *Predicting the Effects of Attorney Fee Shifting,* 47 LAW AND CONTEMPORARY PROBLEMS 139, 147 (1984) ("For the middle-income litigant, to whom the risk of having to pay costs would be a major deterrent, the difference between American and one-way rules on the one hand, and the two-way approach with its threat of substantial costs on the other, should be quite significant.").

**22.** *Gorman v. Saf–T–Mate, Inc.,* 513 F.Supp. 1028, 1033 (D.Ind.1981).

**23.** *Cf. Covenant Mutual Ins. Co.,* 179 Cal.App.3d at 326, 225 Cal.Rptr. 861 ("Indeed it is entirely possible bilateral fee-shifting would lead to fewer lawsuits and less effective enforcement than is experienced in the absence of any fee-shifting at all. Injured people contemplating a lawsuit would confront the prospect of having to pay the defendant's legal fees as well as their own in the event they lost. This would make the bet even less appealing ... where the chances of winning are good but uncertain.").