*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| NORTH PACIFIC ERECTORS, INC., ) | |
| ) | Supreme Court No. S-14606 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-09-09085 CI |
| v. ) | |
| ) | O P I N I O N |
| STATE OF ALASKA, ) | |
| DEPARTMENT OF ) | No. 6818 – September 6, 2013 |
| ADMINISTRATION, ) | |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Paul J. Nangle, Paul J. Nangle & Associates, Anchorage, and Terry R. Marston II, Marston Legal, PLLC, Kirkland, Washington, for Appellant. David T. Jones, Senior Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

This appeal arises from a contract dispute between North Pacific Erectors, Inc. and the Alaska Department of Administration. North Pacific and the Department contracted for a renovation and asbestos removal project in the Juneau State Office

Building. After work began, North Pacific requested additional payment for the asbestos removal, claiming there was a differing site condition that made the project more labor-intensive than it had expected. The Department denied the differing site condition claim, and North Pacific filed an administrative appeal. A hearing officer recommended that North Pacific was entitled to additional compensation. But the hearing officer's recommendation was rejected, and a final agency decision was issued denying North Pacific's claim for additional compensation. North Pacific challenged the agency decision in superior court, arguing that the agency decision was procedurally flawed and incorrectly resolved the contract issues. The superior court affirmed the agency decision.

North Pacific appeals the superior court's judgment, arguing that it has a valid differing site condition claim, that the Department breached its duty to disclose information about the project, and that the agency decision was procedurally flawed. We conclude that even if North Pacific could prevail on its differing site condition claim or its procedural claims, North Pacific's failure to comply with the express provisions of the contract requiring the contractor to keep records of all damages would bar recovery. We therefore affirm the superior court's decision affirming the agency decision.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

#### 1.   Bidding process

In 2006 the Alaska Department of Administration solicited a bid for asbestos abatement and the renovation of one floor in the Juneau State Office Building. The Department's bid solicitation notified potential bidders that they were responsible for investigating the project site. The bid solicitation provided that by submitting a bid, the contractor represented that it had "visited and carefully examined the site and is satisfied as to the conditions to be encountered in performing the Work." At a prebid meeting, the Department provided an opportunity for contractors to visit the project site.

One bidder visited the project site. It is uncontested that North Pacific and its subcontractor did not visit the job site or participate in the prebid meeting before bidding on the contract. Contractors would not have been able to see the pan deck surface[1] at a site visit, however, because fireproofing was still covering the pan deck at the site. But some other areas of the pan deck were uncovered in the State Office Building. The Department reported to the hearing officer that it was normal practice to show a contractor any part of a job site or site condition upon request and that if there had been such a request it would have set up an inspection of the exposed pan deck surface.

North Pacific was the successful bidder for the renovation and asbestos abatement project. The contract between North Pacific and the Department included the same site investigation provision as the bid solicitation, which provided that the contractor had "visited and carefully examined the site and is satisfied as to the conditions to be encountered in performing the Work." The contract also contained detailed provisions establishing procedures for measuring and documenting damages and maintaining cost records of claims for additional compensation.

North Pacific hired a subcontractor for the asbestos abatement. Once work began, North Pacific asserted that its asbestos abatement subcontractor was entitled to additional compensation beyond the contract price for the project. North Pacific claimed that the asbestos removal was significantly more difficult and time-consuming than it could have foreseen because the pan deck surface was dimpled rather than smooth.

## 2. Dispute

After the subcontractor began work on the project, its project manager made a note in his daily report about the dimpled pan deck surface and described the

---

[1] North Pacific describes the metal pan deck as "the material on which concrete is poured to create the floors of each successive story of a building."

cleaning process for the "indentations" and "prot[ru]sions" in the pan deck that "cost[] us considerable time." The workers had to use toothbrushes to clean the bumpy surface, but the contractor's daily report did not contain any time estimate for the additional cleaning efforts. The hearing officer found that "[t]his [initial] entry [was] the only entry . . . made in the daily reports relating to the embossed pan deck." By contrast, the subcontractor repeatedly referred to other problems in the daily reports, including problems with air pressure and containment, foam that failed to expand, and issues with metal flashing.

The subcontractor notified North Pacific about the pan deck problem, and North Pacific then transmitted the information to the Department, requesting additional compensation. The Department denied the initial request for additional compensation.

North Pacific next filed a claim pursuant to the contract's differing site conditions clause. The clause provided:

> The CONTRACTOR shall promptly, and before such conditions are disturbed (except in an emergency as permitted by paragraph 6.19), notify the Contracting Officer in writing of: (1) subsurface or latent physical conditions at the site differing materially from those indicated in the Contract, and which could not have been discovered by a careful examination of the site, or (2) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Contract. The Contracting Officer shall promptly investigate the conditions, and if the Contracting Officer finds that such conditions do materially so differ and cause an increase or decrease in the CONTRACTOR's cost of, or time required for, performance of this Contract, an equitable adjustment shall be made and the Contract modified in writing accordingly.

> . . . In the event that the Contracting Officer and the CONTRACTOR are unable to reach an agreement concerning an alleged differing site condition, the CONTRACTOR will be required to keep an accurate and detailed record which will indicate the actual "cost of the work" done under the alleged differing site condition. Failure to keep such a record shall be a bar to any recovery by reason of such alleged differing site conditions. The Contracting Officer shall be given the opportunity to supervise and check the keeping of such records.

The contract expressly required that the contractor keep an "accurate and detailed record" of the actual cost of work performed under the alleged differing site condition:

> If the CONTRACTOR believes additional compensation or time is warranted, then he *must immediately begin keeping complete, accurate, and specific daily records concerning every detail of the potential claim including actual costs incurred*. The CONTRACTOR shall provide the DEPARTMENT access to any such records and furnish the DEPARTMENT copies, if requested. Equipment costs must be based on the CONTRACTOR's internal rates for ownership, depreciation, and operating expenses and not on published rental rates. In computing damages, or costs claimed for a change order, or for any other claim against the Department for additional time, compensation or both, the contractor must prove actual damages based on internal costs for equipment, labor or efficiencies. Total cost, modified total cost or jury verdict forms of presentation of damage claims are not permissible to show damages.

(Emphasis added.) After considering numerous exhibits, including the contract, bid documents, and a construction report, the Department's procurement officer found that North Pacific was not entitled to additional compensation under the differing site conditions clause.

**B.    Proceedings**

North Pacific brought an administrative appeal of the procurement officer's decision. While this matter involves a contract between North Pacific and the Department of Administration, AS 36.30.625(a) dictates that the Department of Transportation and Public Facilities hears construction contract appeals.[2] The Department of Transportation and Public Facilities Chief Contracts Officer Mark O'Brien designated a hearing officer to hold a hearing and prepare a recommended decision. Alaska Statute 36.30.675 provides that the "hearing officer shall recommend a decision to the . . . commissioner of transportation and public facilities."[3] Under the statute, the commissioner has the broad authority to "affirm, modify, or reject the hearing officer's recommendation in whole or in part," or "remand the matter to the hearing officer."[4]

This case primarily involves five underlying decisions: (1) the hearing officer's initial recommended decision; (2) the Department of Transportation and Public Facilities's decision to remand the case to the hearing officer; (3) the hearing officer's recommended decision on remand; (4) the Department of Transportation and Public Facilities deputy commissioner's final decision; and (5) the superior court's decision.

**1.    Initial hearing officer recommendation**

The hearing officer concluded that there was a differing site condition entitling North Pacific to additional compensation. Even though the subcontractor "did not segregate its labor costs," and its "expert utilized a method of requesting damages

---

[2]    *See* AS 36.30.625(a); AS 36.30.990(6) ("construction" includes projects "altering" and "repairing" a public building).

[3]    AS 36.30.675(a).

[4]    AS 36.30.675(b).

which is prohibited by the contract," the hearing officer "decline[d] to enforce strictly the construction contract limitations" because he found that the Department "should have disclosed this condition [of the pan deck surface] to all bidders." The hearing officer also explained that the "contract contemplates when differing site conditions are discovered, the Contracting Officer and the parties will seek to make a resolution at that time during the contract performance," concluding that both parties failed to follow "the requirements of the contract to resolve the dispute over the differing site conditions during performance of the contract." The hearing officer recommended that North Pacific was entitled to an award of $158,821 for "cost overruns attributed to the embossed pan deck."

### 2. Agency remand of the hearing officer recommendation

The Department of Transportation and Public Facilities remanded the hearing officer's recommended decision, explaining that "the recommended decision fails to address a number of fundamental issues bearing on liability and damages."[5] On remand, the agency instructed the hearing officer "to reconsider this matter in light of relevant legal principles and to issue a revised decision conforming to applicable law." In particular, the agency directed the hearing officer to address the site inspection clause, which provided that the contractor had "visited and carefully examined the site and is satisfied as to the conditions to be encountered in performing the Work," and the "seemingly unambiguous proof requirements" in the contract.

### 3. Hearing officer recommendation on remand

On remand, the hearing officer again decided that North Pacific was entitled to additional payment. The hearing officer recommended three conclusions of law: (1) that the Department of Administration was obligated to disclose the condition of the

---

[5]     *See id.* (authorizing the agency to remand the hearing officer's recommended decision).

embossed pan deck and failed to do so; (2) that the pan deck was a differing site condition; and (3) that the Department's failure to comply with the contract precluded it from relying on the strict damages provisions. On these grounds, the hearing officer recommended an award of $156,539 in damages, slightly less than his initial recommendation of $158,821.

First, the hearing officer concluded that the Department was obligated to disclose the condition of the pan deck surface because the Department had information that "an ordinary bidder would not reasonably acquire . . . without resort to [the Department]" and the Department was aware that the contractor had no knowledge or reason to obtain the information. Reasoning that North Pacific had bid and performed the abatement work without "vital information," the hearing officer concluded that the Department's failure to disclose the pan deck condition "was a breach of its contractual obligations" and justified recovery. The officer explained that the Department's knowledge "(a) came from prior projects and an intimate and unique understanding of the actual conditions in the facility and (b) was well-based in fact and first-hand involvement."

Second, the hearing officer determined that the pan deck was a differing site condition because the contractor was unaware of the condition, the contractor could not have anticipated the condition from a site inspection or from general experience, and the pan deck surface varied from the norm.

Third, based on the Department's failure to disclose the condition, the hearing officer "decline[d] to enforce strictly the construction contract limitations in Section 15.1.4" that required "complete, accurate, and specific daily records" regarding "every detail of the potential claim including actual costs incurred."

### 4. The deputy commissioner's final agency decision

At North Pacific's request, the Department of Transportation and Public Facilities commissioner recused himself and delegated his final decision-making authority to the deputy commissioner.[6] North Pacific does not challenge this delegation of authority. In June 2009 the deputy commissioner issued the final agency decision. "Because the hearing officer's proposed conclusions [were] at variance with the law," the deputy commissioner declined to accept the hearing officer's conclusions. Rather, the deputy commissioner concluded that under the applicable law North Pacific had failed to carry the burden for additional compensation.[7]

### a. North Pacific's differing site condition claim

To analyze the differing site condition claim, the deputy commissioner applied a three-part test from a construction law treatise: (1) the contractor "did not know about the relevant condition encountered; (2) it could not have anticipated the condition from site inspection, reasonable investigation, or general experience; and

---

[6] 2 Alaska Administrative Code (AAC) 12.740(a) (2012) gives commissioners the authority to, in their discretion, "delegate their authority under AS 36.30 to an employee in a department or agency." This "delegation of authority must be in writing." *Id.*

[7] An assistant attorney general, with assistance from Chief Contracts Officer O'Brien, prepared the draft agency decision. Because there was no transcript of the hearing prepared at the time, the assistant attorney general primarily relied on the hearing officer's findings of fact, the exhibits introduced at the hearing, and an email message from the hearing officer sent in response to an inquiry from O'Brien. The deputy commissioner later testified that, after reviewing the draft decision and discussing it with his staff, he signed the agency decision. The deputy commissioner did not personally read the hearing officer's recommended decision or the hearing record.

(3) the condition varied from the norm in similar contracting work."[8] The deputy commissioner stated that North Pacific "demonstrated it lacked actual knowledge of the embossing" on the pan deck and therefore met the first prong of the test for a differing site condition claim.

But under the second prong of the test, North Pacific had to show that it could not have anticipated the condition.[9] "This is a heavy burden" according to the deputy commissioner. The deputy commissioner noted that "[a]s a rule, contractors must 'conduct pre-bid inquiries or reasonable site inspections since recovery on . . . [this] claim is available only if a condition is unknown. A condition is not unknown if it would have been revealed upon inquiry or a reasonable site investigation.' "[10] But "[h]ere, in spite of [the State]'s admonitions, [North Pacific] did not conduct a site investigation." Therefore, the deputy commissioner explained, North Pacific "is charged with the knowledge a reasonable investigation would have revealed." The deputy commissioner explained that a reasonable investigation should have at least entailed a request for photos or other information on the pan deck. The deputy commissioner also pointed out that North Pacific could have obtained information from the five previous subcontractors that had performed asbestos removal for the Department. The agency concluded that

---

[8]     *See, e.g.*, 4A PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER & O'CONNOR ON CONSTRUCTION LAW § 14.53, at 800-01 (2009); *see also Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 311 (Fed. Cl. 1999) (quoting *Lathan Co. v. United States*, 20 Cl. Ct. 122, 128 (Cl. Ct. 1990)); *Municipality of Anchorage v. Frank Coluccio Constr. Co.*, 826 P.2d 316, 323 (Alaska 1992); 64 AM. JUR. 2D *Public Works and Contracts* § 166 (2011).

[9]     *See Frank Coluccio Constr. Co.*, 826 P.2d at 323; *see also Fru-Con Constr. Corp.*, 44 Fed. Cl. at 311.

[10]     The deputy commissioner quoted *Appeal of Shumate Constructors, Inc.*, VABCA No. 2772, 90-3 BCA ¶ 22,946.

"reasonable investigation would have revealed the exposed pan deck and its embossing." Thus, North Pacific's own failure to reasonably anticipate the condition caused the "unplanned expense and delay."

The deputy commissioner relied on several facts to conclude that a reasonable investigation would have revealed the uncovered pan deck. Many of these facts are based on the hearing officer's factual findings. But the deputy commissioner made an error of fact in his decision. The deputy commissioner mistakenly found that "at the alternative site [the Department] had offered to show comparable ceiling pan deck [that] was exposed and its surface was clearly visible to any prospective bidder who chose to observe it."[11] But the Department did not actually offer to show a portion of exposed pan deck. Rather, as the hearing officer found, "there was no exposed pan deck in the area [the Department] showed to the contractor, but had the contractor requested to see it, there were other areas at the [State Office Building] site in which the pan deck is exposed and the embossed pan deck is clearly visible."

The Department acknowledges that the deputy commissioner's "decision referred to [the] incorrect information" from an email exchange between O'Brien and the hearing officer. O'Brien inquired of the hearing officer:

---

[11]    The deputy commissioner made the same mistake in a footnote in his decision:

> We note [the Department] had offered to provide access to the exposed deck after normal business hours. As owner of a functioning office building undergoing asbestos abatement, [the Department] is entitled to adopt reasonable measures to minimize operational disruptions within the building and possible risks to employee well-being. On the evidence presented, we do not find [the Department]'s offer unreasonable.

During the prebid conference were other bidders offered the opportunity to observe the embossed pan deck at an alternate location? I see reference to an "alternate location" but I couldn't tell if that was offered at the prebid, or whether it was assumed that a contractor could have asked on their own to view it at an alternate location.

The hearing officer responded that

[f]rom the evidence all bidders were offered a site inspection. The site inspection would not have revealed the embossed pan deck because it was covered with fire proofing. All bidders were offered the chance to inspect pan deck that was not covered, which was at another location in the S[tate] O[ffice] B[uilding], so not technically the site, and the inspection had to be at a different time of the day and after normal office hours.

Thus it is undisputed that, based on this exchange, the deputy commissioner incorrectly stated that the Department had affirmatively offered participants at the prebid meeting an opportunity to view an uncovered pan deck.

The deputy commissioner also cited an uncontested fact in the hearing officer's decision that stated "[o]nly one contractor, during the pre-bid conference, asked to see the area from which asbestos would be removed" and "[a] ceiling tile was removed so the contractor could see the area." Aside from the factual error, the deputy commissioner relied on North Pacific's failure to conduct a site investigation or to request any photos or other related information on the site to reject the claim. In short, the deputy commissioner concluded that North Pacific had not met the second prong of the differing site conditions test because a "reasonable investigation would have revealed the exposed pan deck and its embossing."

The third prong of a differing site condition is whether the condition varied from the norm in similar contract work.[12] The deputy commissioner acknowledged that North Pacific "offered evidence supporting the basic proposition that embossed decks are generally uncommon outside Juneau" but noted that North Pacific "offered no evidence demonstrating that embossed pan decks installed in 1970[]s era buildings are outside the norm." The deputy commissioner concluded that North Pacific had failed to demonstrate that the pan deck surface was outside the norm, and that North Pacific therefore did not have a valid differing site condition claim.

### b.    North Pacific's superior knowledge claim

The deputy commissioner next addressed North Pacific's contention that the Department had a duty to disclose relevant information regarding the pan deck surface. Because North Pacific could have acquired the relevant information on the pan deck through an independent investigation, the deputy commissioner decided that North Pacific had failed to show that the Department had breached a duty to disclose. The deputy commissioner reasoned that because the Department's staff experience was limited to Juneau and based on previous asbestos abatement projects involving dimpled pan decks, they had no reason to believe the pan deck surface was unique.

The deputy commissioner considered and rejected the hearing officer's recommendation for damages. The deputy commissioner stated that he did not find the Department's investigation of the claim to be unreasonable. In addition, the deputy commissioner pointed to the fact that North Pacific had failed to maintain an accurate daily record of alleged damages as required by the contract.

---

[12]    *See Fru-Con Constr. Corp.*, 44 Fed. Cl. at 311; *Earthmovers of Fairbanks, Inc. v. State, Dep't of Transp. & Pub. Facilities*, 765 P.2d 1360, 1364 (Alaska 1988) (recognizing that federal case law may be useful in analyzing disputes between the government and contractors).

North Pacific appealed the agency decision to the superior court, arguing that the decision was procedurally flawed and that the agency had incorrectly resolved the contract claims.

## 5.     The superior court decision

The superior court conducted a limited trial de novo on North Pacific's procedural objections to the administrative process.  As to the contract claims, the superior court intended "to play its traditional role as an intermediate appellate court." While the superior court was "troubled" by some of the procedural issues, it ultimately held that the final agency decision "was not legally flawed" and the State's "resolution of the legal questions raised by [North Pacific] was reasonable."

### a.     The superior court's limited trial de novo on North Pacific's procedural claims

The superior court held a limited trial de novo to consider North Pacific's procedural arguments regarding (1) the timing of the deputy commissioner's decision, (2) the decision-making role of the deputy commissioner, (3) the role of Department of Transportation and Public Facilities staff in the decision, (4) the alleged deprivation of a hearing, and (5) the alleged ex parte contact.  After trial, the superior court made thorough findings of fact on the agency appeals process, the agency's factual error, communications between the deputy commissioner and the staff, and the lack of bias in the agency decision-making process.  Finally, the superior court concluded that the agency decision was not procedurally flawed.

#### i.     Timing of the deputy commissioner's decision

North Pacific pointed out that the deputy commissioner's decision was issued 48 days after the hearing officer's recommended decision.  North Pacific argued that the passage of 48 days after the issuance of the first recommended decision triggered AS 44.64.060(e), which governs the timing of agency action on decisions issued by

administrative law judges within the Office of Administrative Hearings.[13]  Alaska Statute 44.64.060(e) requires the final decision maker to take action within 45 days of the administrative law judge's proposed decision.[14]  If the final decision maker does not act within 45 days, then the administrative law judge's proposed decision becomes the final decision.[15]

The superior court first concluded that AS 44.64.060(e) applies to administrative law judges and not hearing officers under the Department of Transportation and Public Facilities.[16]  The superior court then determined that even if the statute was applicable, the time frame was directory and not mandatory.  The superior court further reasoned that "[i]t makes little sense to penalize a party" by requiring it to be bound by the recommended decision, simply because the agency responsible for timely action was tardy and that North Pacific "was not prejudiced in any way by the delay of three additional days."

---

[13]    AS 44.64.060(e) (procedure for hearings in the Office of Administrative Hearings).

[14]    AS 44.64.060(e)(1)-(5).

[15]    AS 44.64.060(f).

[16]    *See* AS 36.30.627(a) (establishing procedures for appeals "from a decision of the procurement officer of a claim involving a construction contract"); AS 36.30.680 (stating that "a decision by the commissioner of transportation and public facilities involving procurement of construction shall be sent to all parties by personal service or certified mail within 45 days after receipt by the commissioner of transportation and public facilities of the hearing officer's decision").

### ii. Role of the deputy commissioner

North Pacific argued that there was institutional bias in the decision-making process and that the communications between agency staff and the hearing officer were inappropriate. North Pacific further claimed that the deputy commissioner, as the final decision maker, improperly relied on his staff in rendering the final decision. Rejecting these arguments, the superior court concluded "that all the commissioner needs to do to comply with AS 36.30.675 and .680 is to issue the final decision."

### iii. Role of institutional subordinates within the Department of Transportation and Public Facilities

North Pacific argued that Chief Contracting Officer O'Brien and the agency's assigned assistant attorney general could not play any role in the process leading to the final decision. The superior court determined, however, that the involvement of institutional subordinates did not taint the agency's neutrality or "overstep any statutory assignments of authority."[17] The superior court further found that North Pacific had "not proved by a preponderance of evidence that [the deputy commissioner], [Chief Contracting Officer] O'Brien and [the assistant attorney general] were individually or collectively personally biased against [North Pacific]."

### iv. Alleged deprivation of a hearing

North Pacific argued that it was deprived of a hearing because the final decision maker had minimal exposure to the raw information from the hearing. Specifically, North Pacific objected to the deputy commissioner's failure to review the

---

[17] *See* AS 36.30.675(b) ("The commissioner of administration or the commissioner of transportation and public facilities may affirm, modify, or reject the hearing officer's recommendation in whole or in part, may remand the matter to the hearing officer with instructions, or take other appropriate action."); AS 36.30.685(a)-(b) (allowing the final decision of the commissioner of transportation and public facilities to be appealed to the superior court).

record before rejecting the hearing officer's decision. Although the superior court acknowledged that this argument had "more than a little surface appeal," it nonetheless rejected North Pacific's argument for two reasons: (1) "the oral testimony was not the entire record," and the agency decisions were based on the hearing officer's decision and the available exhibits; and (2) the "problem is that to enforce an adequate role by the final decision maker would almost always require exploration into the deliberative process." As a result, the superior court concluded that North Pacific had "been provided a hearing process that complie[d] with due process."

### v.   Alleged ex parte contact

North Pacific claimed the final agency decision was based on ex parte communications between O'Brien and the hearing officer and thus violated due process. Again, the superior court rejected North Pacific's argument. While the superior court found that O'Brien requested clarification from the hearing officer and that the hearing officer responded,[18] the court concluded that there was no traditional ex parte contact because the communication did not involve a party to the case. The superior court further concluded that the erroneous factual finding that was likely caused by the exchange did not substantially impact the agency decision.

### b.   The superior court's appellate review of the alleged errors of contract interpretation

After reviewing North Pacific's differing site condition claim, the contract, and the reasoning of the hearing officer and the deputy commissioner, the superior court considered whether North Pacific "could have learned of the condition of the pan deck by a site inspection or other reasonable inspection." The superior court concluded that the Department of Transportation and Public Facilities had a reasonable basis in deciding

---

[18]     *See supra* Part II.B.4.a.

a) that [North Pacific] should have inspected the site; and b) that had it attended the pre-bid meeting and asked the simplest question (but the most important to its bid): May we see a sample of the exposed pan deck?; and c) that [the Department] would have provided an effective prompt and informative response, that is, [the Department] would have revealed a portion of exposed embossed pan deck for inspection. By asking that question [North Pacific] would have received an appropriate response and [North Pacific] would not be where it is today.

Thus, the superior court affirmed the agency's conclusions denying North Pacific's differing site condition claim.

### c. Attorney's fees

The State requested attorney's fees and costs as the prevailing party. North Pacific opposed, arguing that AS 09.60.010[19] barred an award of attorney's fees to the State because North Pacific had raised constitutional due process issues. Finding that the State was the prevailing party, the superior court awarded it thirty percent of the actual reasonable fees incurred under Alaska Civil Rule 82 as well as costs under Alaska Civil Rule 79.

## III. STANDARDS OF REVIEW

The superior court acted in part as an intermediate court of appeal and in part as an initial fact-finder. "When the superior court acts as an intermediate court of appeal from an agency decision we review the agency decision directly."[20] We will

---

[19]  AS 09.60.010(c) (costs and attorney's fees in actions concerning the enforcement of a right under the United States Constitution or the Alaska Constitution).

[20]  *Pyramid Printing Co. v. Alaska State Comm'n for Human Rights*, 153 P.3d 994, 997-98 (Alaska 2007) (citations omitted).

uphold an agency decision if it is supported by substantial evidence.[21] "We apply the reasonable basis standard of review to questions of law involving agency expertise, and the substitution of judgment standard to questions outside the agency's expertise."[22]

"Where the superior court conducts a partial trial de novo, we review the court's findings and conclusions."[23] We review the superior court's factual findings under the clearly erroneous standard and the superior court's legal conclusions de novo.[24]

Generally we review an award of Civil Rule 82 attorney's fees for an abuse of discretion.[25] "As to reviewing an award under AS 09.60.010(c), '[t]he independent standard of review . . . applies to considering whether the trial court properly applied the law when awarding attorney's fees.' "[26]

## IV. DISCUSSION

### A. The Department Did Not Breach The Duty To Disclose Superior Knowledge.

North Pacific argues that the hearing officer "properly found that [North Pacific] was entitled to an equitable adjustment to its contract price" because "the State knew of, but did not disclose, concealed dimpling of the pan deck that substantially

---

[21] *Id.* at 998.

[22] *Id.* (citing *Leigh v. Seekins Ford*, 136 P.3d 214, 216 (Alaska 2006)).

[23] *Nash v. Matanuska-Susitna Borough*, 239 P.3d 692, 698 (Alaska 2010) (citing *City of Nome v. Catholic Bishop of N. Alaska*, 707 P.2d 870, 875 (Alaska 1985)).

[24] *Id.* (citations omitted).

[25] *See Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1241 (Alaska 2013) (reiterating this court's longstanding position holding trial courts to have broad discretion in fashioning attorney's fee awards under Rule 82).

[26] *State v. Jacob*, 214 P.3d 353, 358 (Alaska 2009) (alteration in original) (quoting *DeNardo v. Cutler*, 167 P.3d 674, 677 (Alaska 2007)).

increased the costs of [North Pacific's] work." The Department contends that "had North Pacific or its subcontractor conducted a reasonable investigation — or simply asked any of the subcontractors who worked on the five prior asbestos-abatement jobs at the State Office Building — it would have learned of the patterned pan deck."

Although the hearing officer concluded that the Department was obligated to disclose the condition and failed to do so, the deputy commissioner determined that the Department did not have a duty to disclose the site condition, reasoning that it was possible for North Pacific to have obtained the information through site visits or an independent investigation. According to the deputy commissioner, "recognition of a superior knowledge claim would effectively reverse the allocation of contractual responsibilities."

In *Morrison-Knudsen Co. v. State*, we explained our test for imposing on the State a duty to disclose information in its possession:

> [D]id the state occupy so uniquely-favored a position with regard to the information at issue that no ordinary bidder in the plaintiff's position could reasonably acquire that information without resort to the State? Where resort to the state is the only reasonable avenue for acquiring the information, the state must disclose it, and may not claim as a defense either the contractor's failure to make an independent request or exculpatory language in the contract documents.[27]

---

**27** 519 P.2d 834, 841 (Alaska 1974); *see also Conner Bros. Constr. Co. v. United States*, 65 Fed. Cl. 657, 688 (Fed. Cl. 2005) ("There are four requirements for establishing when the government has failed in its duty to disclose superior knowledge. First, the contractor undertakes to perform without vital knowledge of a fact that affects performance costs or direction. Second, the government was aware that the contractor had no knowledge of and had no reason to obtain such information. Third, the contract specification supplied either misled the contractor, or did not put it on notice to inquire.

(continued...)

In *Morrison-Knudsen*, the contractor claimed that the State should have disclosed information it had received from two other bidders regarding the feasibility of hydraulic dredging at a construction site.[28]  The contract bid documents contained a drawing showing that some underwater areas were "Areas Proven Suitable For Dredging."[29]  But dredging those areas was in fact *not* feasible, and as a result, the contractor had to transport the fill material by barge to the construction site.[30]  Because the contractor "could easily have conducted equally extensive research on its own" and because the other contractors had obtained the information without special technical assistance from the State, we concluded that the State had no duty to disclose information it had received from another contractor on the feasibility of hydraulic dredging at the site.[31]

We arrived at a similar conclusion in *B-E-C-K Constructors v. State, Department of Highways*.[32]  In *B-E-C-K Constructors*, the contractor asserted that the State had a duty to disclose earthquake damage reports concerning a bridge.[33]  But we again concluded that the State had no duty to disclose because the reports "were all based

---

[27](...continued)
Fourth, the government failed to provide the relevant information."); 2 PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER & O'CONNOR ON CONSTRUCTION LAW § 5:108, at 176 (2002).

[28]     *Morrison-Knudsen Co.*, 519 P.2d at 838-39.

[29]     *Id.* at 836.

[30]     *Id.* at 836-38.

[31]     *Id.* at 842.

[32]     604 P.2d 578, 585 (Alaska 1979).

[33]     *Id.*

on information obtained by simple visual inspection of the bridge" and the contractor could have independently performed a visual inspection of the bridge.[34]

In short, a successful superior knowledge claim by a contractor requires the government to have unique control over information.[35] For instance, in *Morrison-Knudsen*, we noted several federal decisions involving successful superior knowledge claims:

> [I]n *Helene Curtis Industries*, the government "knew much more about the product than the bidders did or could" by virtue of having sponsored all the research that had been done on chlormelamine; in *Aerodex*, the government "was in a far better position than . . . any . . . bidder to tell whether the [thermal] resistor would be available from W[estern] E[lectric]" by virtue of its intimate involvement with Western Electric's work on the resistor; and in *Hardeman-Monier-Hutcherson*, the government possessed "vital information concerning the weather and sea conditions at the site" by virtue of having commissioned the . . . reports, which were not generally available. Liability was imposed in all three cases, even though the contractor specifically requested the government's information only in *Hardeman*, and even though the contracts in all of the cases contained exculpatory clauses.[36]

Applying this standard, we conclude that the Department did not occupy such "uniquely-favored a position with regard to the information at issue that no ordinary

---

[34]    *Id.*

[35]    *See id*; *Morrison-Knudsen Co.*, 519 P.2d at 839-41.

[36]    *Morrison-Knudsen Co.*, 519 P.2d at 841-42 (first alteration added; other alterations in original) (citations omitted) (quoting *Hardeman-Monier-Hutcherson v. United States*, 458 F.2d 1364, 1371-72 (Ct. Cl. 1972); *Aerodex, Inc. v. United States*, 417 F.2d 1361, 1366 (Ct. Cl. 1969); *Helene Curtis Indus., Inc. v. United States*, 312 F.2d 774, 778 (Ct. Cl. 1963)).

bidder in the plaintiff's position could reasonably acquire that information without resort to the State."[37]  In this case, the State owns the buildings and a mere visual inspection of the building site would not have revealed the surface of the pan deck.  Although the Department had more control over the information here than in *Morrison-Knudsen* and *B-E-C-K Constructors*, the Department did not have absolute control over the relevant information.  Rather, North Pacific could have reasonably acquired the information without resort to the Department.  North Pacific could have requested photos or an inspection of an exposed pan deck, spoken to other contracting companies that had previously performed asbestos abatement for the Department in Juneau, or researched conditions of similar buildings in the area.  Indeed, one of the other bidders for this abatement subcontract had worked in the same building and was aware of the dimpled condition of the pan deck.  We conclude that North Pacific could have conducted research on its own and was not dependent on the Department as the only reasonable avenue for acquiring information on the surface of the pan deck.  Accordingly, we hold that the State had no duty to disclose information regarding the pan deck surface.

B.  **North Pacific's Failure To Comply With The Contractual Records Requirement And The Damages Provision Bars Recovery For The Differing Site Condition Claim.**

Under the differing site conditions provision, the contract expressly required a contractor "to keep an accurate and detailed record which will indicate the actual 'cost of the work' done under the alleged differing site condition" and further provided that  "[f]ailure to keep such a record shall be a bar to any recovery by reason of such alleged differing site conditions."  The contract also mandated that for additional compensation claims, the contractor "must immediately begin keeping complete, accurate, and specific daily records concerning every detail of the potential claim

---

[37]     *Id.* at 841.

including actual costs incurred" and "[i]n computing damages, or costs claimed for a change order, or for any other claim against the Department for additional time, compensation or both, the contractor must prove actual damages based on internal costs for equipment, labor or efficiencies." Under the contract, "[t]otal cost, modified total cost or jury verdict forms of presentation of damage claims are not permissible to show damages." Finally, "[l]abor inefficiencies must be shown to actually have occurred and can be proven solely based on job records." Thus, the parties contracted to require detailed records for differing site condition claims and to establish the actual cost method as the only permissible method to calculate damages.

We conclude that North Pacific's failure to comply with these provisions in the contract bars recovery for the differing site condition claim. A fundamental rule in contract interpretation is that "[u]nless a different intention is manifested, where language has a generally prevailing meaning, it is interpreted in accordance with that meaning."[38] And "[p]arties are free to enter into contracts that contain provisions that apportion damages in the event of a default, and may agree to a particular measure of damages in the event of a breach or a default."[39] The contract at issue here expressly provided for the actual cost method to calculate damages and prohibited the total cost, modified cost, and jury verdict methods.

Not only did the contract call for actual cost data, under Alaska law, "[t]he preferred method is the actual cost method, 'in which each element of extra expense

---

[38]    RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(a) (1981).

[39]    24 RICHARD A. LORD, WILLISTON ON CONTRACTS § 64:17, at 152 (4th ed. 2002) (emphasis added) (footnotes omitted).

incurred because of the [alleged breach] is added up for a total claimed amount.' "[40] Similarly, other jurisdictions "have shown a strong preference for the actual damage method of calculation."[41] Courts prefer the actual cost method because it provides the court with a record of discrete additional costs, guaranteeing that the final amount of the adjustment will be equitable and reliable.[42]

Here the hearing officer found that the subcontractor wrote only one daily report discussing problems encountered at the outset with the embossed pan deck and that the subcontractor "did not segregate its labor costs." We note that the single daily report concerning problems cleaning the pan deck surface is worded in broad, general terms and does not contain any estimate of additional costs or work hours. And instead of relying on the contractually mandated method to calculate damages, North Pacific's expert relied on the modified total cost method, and the hearing officer relied on the jury verdict method to calculate damages. We have occasionally approved of the jury verdict method to calculate damages when the contractor has put forth some actual cost data, in addition to other evidence, and when specific contractual record-keeping requirements

---

[40] *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 41 (Alaska 1998) (quoting *Municipality of Anchorage v. Frank Coluccio Constr. Co.*, 826 P.2d 316, 324-27 (Alaska 1992)); *see also* ROBERT F. CUSHMAN ET AL., PROVING AND PRICING CONSTRUCTION CLAIMS § 4.07[B][3], at 132 (3d ed. 2001).

[41] WILLIAM SCHWARTZKOPF & JOHN J. MCNAMARA, CALCULATING CONSTRUCTION DAMAGES § 1.03[A] (2d ed. Supp. 2012).

[42] *See id.*; CUSHMAN ET AL., *supra* note 40, § 4.07[B][3], at 132; *see also Frank Coluccio Constr. Co.*, 826 P.2d at 325 (stating that the actual cost method of damages calculations involves the addition of each element of extra costs incurred because of the differing site condition).

were not at issue.[43] The jury verdict method permits the contractor to "present evidence of the cost of additional work to the finder of fact[,] including any actual cost data, accounting records, estimates by law and expert witnesses, and calculations from similar projects."[44] But the jury verdict method is only appropriate once the contractor has shown that " 'there was no more reliable method for computing damages.' "[45] Although our decisions indicate that the jury verdict method, in conjunction with some actual cost data, may be appropriate when there is no more reliable method to calculate damages, North Pacific is bound by the express provisions of the contract.

Our conclusion is supported by federal decisions in this area.[46] The United States Court of Claims stated in *Joseph Pickard's Sons Co. v. United States* that, to rely on the jury verdict method, a contractor must show "a justifiable inability to substantiate

---

[43]      *See, e.g.*, *Power Constructors, Inc.*, 960 P.2d at 41-45; *Frank Coluccio Constr. Co.*, 826 P.2d at 326.

[44]      *Power Constructors, Inc.*, 960 P.2d at 41 (quoting *Frank Coluccio Constr. Co.*, 826 P.2d at 325) (internal quotation marks omitted).

[45]      *Frank Coluccio Constr. Co.*, 826 P.2d at 327 (quoting *Fattore Co. v. Metro. Sewerage Comm'n of Milwaukee Cnty.*, 505 F.2d 1, 5 (7th Cir. 1974)); *see also Corban Indus., Inc. v. United States*, 24 Cl. Ct. 284, 287 (Cl. Ct. 1991); *Power Constructors, Inc.*, 960 P.2d at 41; Allen L. Overcash & Jack W. Harris, *Measuring the Contractor's Damages by "Actual Costs" – Can It Be Done?*, 25 CONSTRUCTION LAW 31, 31-32 (Winter 2005).

[46]      *See Joseph Pickard's Sons Co. v. United States*, 532 F.2d 739, 742-44 (Ct. Cl. 1976) (denying claim based on contractor's failure to provide direct proof of additional costs); *see also Corban Indus.*, 24 Cl. Ct. at 287-88 (deciding that contractor forfeited its claim to recover costs by failing to produce reliable evidence of actual costs); *Assurance Co. v. United States*, 813 F.2d 1202, 1204-06 (Fed. Cir. 1987) (holding that contractor was not entitled to use the jury verdict method to calculate damages because contractor had failed to submit cost documentation or explain the absence of records).

the amount of his resultant injury by direct and specific proof."[47] Because the contractor in that case had not shown that it "was prevented from specifically proving its damages" by a reason beyond its control, the Court of Claims upheld the Armed Services Board of Contract Appeals' finding that the failure to produce records of actual costs was inexcusable and fatally defective.[48]

Despite the express contract provisions requiring detailed records and use of the actual cost method to calculate damages, North Pacific argues that it is entitled to additional compensation because (1) it maintained cost records and (2) the contractual remedy "failed of its essential purpose." Citing the contract's requirement for "complete, accurate, and specific daily records concerning every detail of the potential claim including actual costs incurred," the Department responds that "[t]he undisputed evidence established that neither North Pacific nor its subcontractor maintained the detailed cost records that the contract required."

First, North Pacific claims that the contract "just requires keeping actual records of the costs, which the hearing officer found was done." But the hearing officer did not find that North Pacific had complied with the contractual records requirement. Rather, the hearing officer pointed out that the subcontractor had made only one daily report on the alleged differing site condition and did not separate or track additional costs. The hearing officer further acknowledged that the subcontractor's expert used "a method of requesting damages which is prohibited by the contract." Nonetheless, the hearing officer "decline[d] to enforce strictly the construction contract limitations in Section 15.1.4," reasoning that the "limitation in this contract for damages should not be

---

[47]     532 F.2d at 742.

[48]     *Id.* at 744.

enforced as an equitable matter because [the Department] failed to disclose the embossed pan deck prior to bid."[49]

Second, North Pacific argues that "[a]s applied to [North Pacific]'s differing site condition claim, the State's clause would deny any remedy at all because [North Pacific]'s added costs are not distinguishable from its as-planned costs without using one of the prohibited quantification formulas" and the remedy thus "failed of its essential purpose." But North Pacific does not offer any explanation why it was unable to provide a contemporaneous record of the actual additional costs incurred and how the agreed-upon contractual method of calculating damages would deny any remedy. North Pacific relies on *Pierce v. Catalina Yachts, Inc.*[50] to argue that the records requirement "failed of its essential purpose and is unenforceable," but our reasoning in *Pierce* does not apply to this case. In *Pierce*, a Uniform Commercial Code[51] case, we held that when a limited warranty fails due to a seller's breach, a separate provision of the warranty barring consequential damages will survive as long as the bar is not unconscionable.[52] In that case, we further held that the bar to consequential damages was unconscionable because the seller acted in bad faith.[53] In construing the Uniform Commercial Code, we considered the policy behind the failure-of-the-essential-purpose rule, which is to

---

[49]    The hearing officer also stated that the Department "did not make an attempt to resolve the issue with [the subcontractor] during the performance of the contract."

[50]    2 P.3d 618 (Alaska 2000).

[51]    We note that the Uniform Commercial Code applies to "commercial transactions" or transactions in goods but this case involves a contract for services. U.C.C. § 1-102(2)(a) (2011); *see* AS 45.02.102.

[52]    *Pierce*, 2 P.3d at 622-23.

[53]    *Id.* at 623-24.

guarantee that a buyer has "at least minimum adequate remedies."[54]  Although *Pierce* requires minimum remedies when one party has acted in bad faith, North Pacific has not shown that the Department acted in bad faith or breached the contract,[55] and any limitation on remedies is due to North Pacific's own failure to maintain the requisite records.  Moreover, the hearing officer did not make any findings to indicate bad faith actions or unconscionability.

North Pacific also cites Illinois case law to support its argument that the express contract provisions are inapplicable.[56]  In *Razor v. Hyundai Motor America*, another Uniform Commercial Code case, the Illinois Supreme Court held that a warranty's consequential damages provision was enforceable unless it was unconscionable, regardless of whether the warranty's limited remedy failed its essential purpose.[57]  *Razor* has limited applicability to the contract for services here.  While *Razor* involves the relationship between a consequential damages provision and a limited remedy clause, this case involves an express record-keeping requirement, and there were no allegations of unconscionability.[58]

In sum, North Pacific is barred from recovery for any alleged differing site condition because it did not substantially comply with the damages and records provisions of the contract.

---

[54]    *Id.* at 621 (internal quotation marks omitted).

[55]    *See* discussion *supra* Part IV.A.

[56]    *See, e.g.*, *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607 (Ill. 2006); *Adams v. J.I. Case Co.*, 261 N.E.2d 1 (Ill. App. 1970), *abrogated by Razor*, 854 N.E.2d 607.

[57]    854 N.E.2d at 622.

[58]    *See id.* at 620-21.

## C. North Pacific's Procedural Claims

North Pacific challenges the superior court's legal conclusions following the court's trial de novo on procedural issues. North Pacific raises several procedural claims: (1) the deputy commissioner did not review directly the hearing officer's recommended decision or the hearing transcripts; (2) the deputy commissioner relied on a false finding of fact that was not supported by evidence at the hearing; (3) any procedural defects were not cured by a delegation of authority to staff; and (4) the hearing officer's recommended decision should be deemed final when a valid commissioner's decision was not "appropriate" or timely issued.[59] The Department responds that the deputy commissioner was not required to review the record, a recording, or a transcript of the hearing and maintains that the deputy commissioner's decision was proper.[60] While the deputy commissioner made a factual error, and the

---

[59] *See* AS 36.30.675(a) ("The hearing officer shall recommend a decision to the commissioner of administration or the commissioner of transportation and public facilities, as appropriate, based on the evidence presented. The recommendation must include findings of fact and conclusions of law."); AS 36.30.680 ("[A] decision by the commissioner of transportation and public facilities involving procurement of construction shall be sent to all parties by personal service or certified mail within 45 days after receipt by the commissioner of transportation and public facilities of the hearing officer's decision.").

[60] *See, e.g.*, *In re Reinstatement of Wiederholt*, 24 P.3d 1219, 1233 (Alaska 2001) (holding that Rule 29 time limits were merely directory rather than mandatory, despite legislature's use of "will," because the legislative intent was to create guidelines for orderly conduct of public business, and because "serious, practical consequences would follow from a finding that it is mandatory" (citations omitted)); *State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 357 (Alaska 2000) (concluding that "shall" language in statute governing insurance was directory because the statute imposed no consequence for an untimely decision and there was no injury from the delay); *Oaksmith v. Brusich*, 774 P.2d 191, 201-02 (Alaska 1989) (explaining that other courts had concluded that time limits for trial courts' issuance of decisions are

(continued...)

"clarification" email between the hearing officer and the agency raises some concerns, we do not need to reach the procedural issues because we reject North Pacific's superior knowledge argument as a matter of law and because North Pacific is barred from recovery for its differing site condition claim. Thus, we conclude that the deputy commissioner's factual error was harmless and the ex parte exchange between O'Brien and the hearing officer, while a questionable practice, did not affect North Pacific's substantial rights.

## D.  The Attorney's Fees Award Was Not An Abuse Of Discretion.

The Department of Transportation and Public Facilities awarded the Department of Administration attorney's fees and costs following the administrative proceeding.[61] Subsequently the superior court awarded attorney's fees and costs to the Department of Administration and the Department of Transportation and Public Facilities.[62] Arguing it should be the prevailing party on appeal, North Pacific challenges the awards of attorney's fees to the State under Rule 82 for the administrative appeal and under AS 09.60.010 for its due process claims. The Department first responds that North Pacific was not the prevailing party and that, even if North Pacific prevailed on appeal, "it would not be entitled to an award of full reasonable attorney's fees under AS 09.60.010(c)(1)." The Department further relies on subsection (d)(2) of the statute.

---

[60](...continued)
directory and not mandatory).

[61]    The Department of Transportation and Public Facilities awarded $12,899.19 to the Department of Administration for attorney's fees and costs from the administrative appeal.

[62]    The superior court awarded attorney's fees of $35,537.40 to the Department of Administration and $16,439.99 to the Department of Transportation and Public Facilities.

Alaska Statute 09.60.010(d)(2) provides that "[i]n calculating an award of attorney fees and costs under (c)(1) of this section, . . . the court shall make an award only if the claimant did not have sufficient economic incentive to bring the suit, regardless of the constitutional claims involved." Based on this requirement, the Department maintains that North Pacific is not entitled to attorney's fees because North Pacific had sufficient economic incentive to bring its claim for additional compensation.

Alaska Statute 09.60.010(c)(2) prohibits a court from ordering a party to pay the attorney's fees of the opposing party where the claims concerned "constitutional rights if the . . . plaintiff . . . did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved." Although North Pacific alleged due process violations, we conclude that North Pacific had "sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved."[63] North Pacific's primary requested relief in superior court was an order vacating the deputy commissioner's decision and "judgment in favor of North Pacific Erectors, Inc. in the amount of $163,173.42." Because additional compensation was the motivation throughout the litigation and because North Pacific does not explain how it lacked sufficient economic motivation, AS 09.60.010 does not apply. We therefore affirm the award of reasonable attorney's fees to the State as the prevailing party.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[63]    AS 09.60.010(c)(2).